IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

RICHMOND DIVISION

| | | |
|---|---|---|
| DANIELLE RANDLE, on behalf of herself and all others similarly situated, | § § § | |
| Plaintiff, | § § | |
| vs. | § § | CIVIL ACTION NO. 3:09-CV-608 |
| H & P CAPITAL, INC., MS. ROBERTS, GARY ROBERT HENRION and NOEL LOUIS POOLER, | § § § § | |
| Defendant. | § § | |

MEMORANDUM IN OPPOSITION TO PLAINTIFF'S ATTORNEY'S FEE APPLICATION

H & P Capital, Inc., ("H & P"), Gary Robert Henrion ("Henrion") and Noel Louis Pooler ("Pooler")[or hereinafter referred to collectively as Defendants] file this Memorandum in Opposition to Plaintiff's Attorney Fee Application as follows:

"Congress wrote this statute to have a cottage industry litigation."

*United States Supreme Court Justice Sonia Sotomayor,* January 23, 2010[1]

This case epitomizes out of control attorneys' fee billing on an individual's claims for one alleged technical violation of the Fair Debt Collection Practices Act. 15 U.S.C. § 1692 *et seq* ("FDCPA"). For many reasons, Plaintiff's request for attorney's fees should be significantly reduced.

---

[1] *Karen L. Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich, LPA, et al*; Cause No. 08-1200, arguments heard on January 23, 2010, page 19, ll. 13 – 14.

## Summary of Argument

**1.**    Plaintiff's attorneys' hours are excessive and should be significantly reduced since the vast majority of work and services set forth in Plaintiff's Fee Application were not reasonably incurred in this litigation and were not incurred to prosecute Plaintiff's individual claim.

**2.**    Plaintiff cannot demonstrate that two attorneys were necessary, let alone reasonable for this garden variety FDCPA case.  Therefore the Court should disallow all time allegedly incurred by Randolph Bragg.

**3.**    The hourly rates requested by Randolph Bragg and Dale Pittman reflected in Plaintiff's Fee Application are not reasonable for this case.

## Background Facts

After incurring and defaulting on a lawful debt, a debt to which this day, Danielle Randle ("Plaintiff") has never denied owing, Plaintiff instituted this suit seeking certification of three (3) different classes against Defendant by alleging that a voicemail message left for Plaintiff violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq* ["FDCPA"] because it did not disclose it was from a debt collector and the provisions set forth in § 1692e(11) or mini-Miranda[2] were not allegedly included as part of the message.  Plaintiff did not allege any other violation of the FDCPA, did not allege she was harassed or abused by Plaintiff and did not allege she sustained any actual damages.

From the inception of this case, Defendant's counsel repeatedly requested whether Plaintiff would settle her case on an individual basis.  At each step, Plaintiff's attorneys

---

[2] The mini-Miranda is a message left with a debtor from a third party debt collector in an initial communication advising that the communication is from a debt collector, is an attempt to collect a debt and any information will be used for the purpose.

responded that such settlement was not possible and at no time, did Plaintiff's attorneys ever propose settling this matter on Plaintiff's individual claim alone.

Finally, after a settlement conference was unsuccessfully concluded, Plaintiff agreed to Defendant's settlement overtures, dropped her demand that three (3) classes be certified and the parties entered into a settlement agreement on the following basis: "H & P will pay the individual plaintiff, Danielle Randle the amount of Six Thousand and No/100 Dollars ($6,000.00) in full and final settlement of all of her claims.  With regard to Plaintiff's attorneys' fees, <u>Defendants agree to pay attorneys' fees incurred to prosecute the individual plaintiff's individual claims </u>in this case on an agreed upon amount, of if an amount cannot be agreed by the parties, then by order of the Court."  [emphasis added].

Although no motion for class certification was ever filed, no dispositive motion on the entire case was ever filed by Plaintiff, no depositions were ever conducted, Plaintiff used "form" discovery and pleadings, Plaintiff abandoned the vast majority of her claims in the case and the issue of Plaintiff's attorney's fees was limited by agreement to the Plaintiff's individual claim alone, Plaintiff's attorneys claim to have incurred in excess of $74,000 in attorneys' fees and are seeking an order from the Court requiring Defendants to pay in excess of $67,000 in attorney's fees.

Such amount is grossly excessive and should be significantly reduced.

<u>Argument and Authorities</u>

<u>Plaintiff's Individual Claim</u>

The elements comprising Plaintiff's individual claim consisted of the following:

1.  With regard to Plaintiff's debt, was H & P a debt collector under the FDCPA, § 1692a(6) [Defendants did not dispute this];

2. With regard to Plaintiff's debt, was Plaintiff a consumer under the FDCPA, § 1692a(3) [Plaintiff chose to not repay a lawful debt she incurred and as such, this was not in dispute];

3. Was Plaintiff's lawful obligation a debt as defined by the FDCPA § 1692a(5) [This was not disputed];

4. Did H & P leave voicemail messages for Plaintiff [Defendants did not dispute this];

5. Did the voicemail messages left for Plaintiff violate FDCPA § 1692e(11) by not disclosing H & P was a debt collector and leaving the mini-Miranda required by said section [Defendants only disputed whether the message set forth by Plaintiff was complete].

That is the totality of Plaintiff's individual claim.  Of the five (5) issues, four (4) were not in dispute.  However, to establish this one issue in dispute, Plaintiff's attorneys are requesting the Court to order Defendants to pay in excess of $67,000 in attorney's fees.

<u>Costs and Fees under the FDCPA</u>

Defendants recognize when a consumer brings a successful FDCPA lawsuit, the defendant debt collector is liable for the costs of the action together with a reasonable attorney's fee in an amount to be fixed in the discretion of the Court. 15 U.S.C. § 1692k(a)(3);  *see also Hagen v. MRS Associates, Inc.,* 2001 U.S.Dist. Lexis 6789, *2 (E.D. La. 2001).  DefendantS acknowledge that a plaintiff is considered a prevailing party through settlement of the merits of the claims where the relief secured directly benefits her at the time of settlement.  *Id.* (*citing Farrar v. Hobby,* 506 U.S. 103, 111, 113 S.Ct. 566, 121 L.Ed.2d 494 (1994)).

<u>The calculation of reasonable fees and costs under § 1692k(a)(3) is governed by the facts and circumstances of the underlying litigation</u> viewed in light of the twelve factors set forth in

*Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974),[3] *see also, Loranger v. Stierherim,* 10 F.3d 776, 781 n.6 (11th Cir. 1994) [emphasis added].

Taking these factors into account, and especially since the parties agreed to limit Plaintiff's attorneys' fees to her individual claim alone, Plaintiff's requested fees and expenses should be dramatically reduced to a level that is reasonable.

<u>Plaintiff's attorneys hours are excessive and should be significantly reduced since the vast majority of the work and services set forth in Plaintiff's Fee Application were not reasonably incurred to prosecute Plaintiff's individual claim.</u>

The vast majority of the time and labor reflected on Plaintiff's counsels' time records was excessive and was not reasonably incurred pursuing Plaintiff's individual claim.

Plaintiff's counsels' statement: "Here, Plaintiff's counsel did not inflate this small case into a large one; its protraction resulted from the stalwart defense"[4] is both factually inaccurate and disingenuous.[5] The mountain of attorneys' fees Plaintiff is seeking from this molehillian case came about because Plaintiff brought in an alleged class action specialist attorney, plead this case as a class action lawsuit and attempted to establish three (3) separate and distinct classes.[6] Even after being repeatedly advised that Defendants' net worth would not justify certification of a class, Plaintiff's counsel continued to pursue class certification and suggested a no opt out, no notice class under the Federal Rules of Civil Procedure.

---

[3] The Johnson factors are: (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount of time involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson,* 488 F.2d at 717-19.

[4] See Plaintiff's Memorandum in Support of Plaintiff's Motion for an Award of Attorney's Fees and Costs ("Memorandum") at 11.

[5] As will be shown, Plaintiff's attorneys are seeking to be paid nearly $12,000 prior to Defendants even being served with this lawsuit.

[6] See Plaintiff's Original Complaint.

Before Defendants even filed their answer, Defendants' attorney asked if Plaintiff was amenable to settlement on an individual basis.[7]  Plaintiff's counsel were steadfast in their refusal to not settle on an individual basis.[8]  Throughout the entirety of this case, Plaintiff's counsel never made one settlement offer on Plaintiff's individual claims alone.

From Defendants' appearance in this case, Defendants' counsel repeatedly stated that Defendants' net worth would not justify certification of a class.  Plaintiff's counsel acknowledged this in a correspondence dated December 11, 2009 wherein counsel stated, "Let's not replow previously plowed rows, particularly in a case in which you continue to remind us of how poor your clients are. . .."[9]

At the settlement conference conducted in this case on January 19, 2010, Defendants again made an offer to pay Plaintiff on her individual claims and to discuss Plaintiff's attorney's fees.  Plaintiff's counsel again steadfastly refused to consider any offer that did not involve certifying a class.

Plaintiff's counsel's position was that they could not ethically negotiate a resolution of the individual claims without taking into account the prospective class.[10]  Despite repeated requests for caselaw supporting this position, Plaintiff's counsel never produced any such authority.

Further, Plaintiff's counsel's representation to the Court, "Counsel's time entries show no time entries attributed to class related matters[11] is inaccurate to the point of absurdity.  On at

---

[7] See November 13, 2009 letter attached to Dunn Declaration (Ex. 1).
[8] See November 13, 2009 letter from Plaintiff's counsel attached to Dunn Declaration (Ex. 7).
[9] See December 11, 2009 letter from Plaintiff's counsel attached it Dunn Declaration (Ex. 2).
[10] See email dated January 18, 2010 attached to Dunn Declaration (Ex. 3).
[11] See Plaintiff's Memorandum 'at 9.

least seven (7) different occasions, Attorney Bragg makes reference to work performed to the "class" in his billing records.[12]

For Plaintiff's counsel to further represent that it was reasonable for two experienced FDCPA practitioners to spend the following:  Attorney Pittman 115.5 hours, and Attorney Bragg 51.1 hours, to settle an individual's case wherein the only issue is whether H & P left a § 1692e(11) compliant communication in two voicemail messages strains credulity.

The Congress that passed the Fair Debt Collection Practices Act in 1977 could hardly have wished to reward lawyers for doing non-productive work and wasting their adversaries' time and the time of the courts as well.  *Lee v. Thomas & Thomas,* 109 F.3d 302, 306 (6th Cir. 1997).  In directing the courts to award "reasonable" fees, on the contrary, Congress undoubtedly wished to ensure that the lawyer representing a successful plaintiff would receive a reasonable fee for work reasonably found necessary – nothing less, and nothing more.  *Id.*

The Supreme Court further cautioned that:

"These [fee shifting] statutes were not designed as a form of economic relief to improve the financial lot of attorneys, nor were they intended to replicate exactly the fee an attorney could earn through a private fee arrangement with his client. Instead, the aim of such statutes was to enable private parties to obtain legal help in seeking redress for injuries resulting from the actual or threatened violation of specific federal laws. Hence, if plaintiffs, [such as Delaware Valley,] find it possible to engage a lawyer based on the statutory assurance that he will be paid a "reasonable fee," the purpose behind the fee-shifting statute has been satisfied."

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 92 L.Ed.2d 439, 106 S.Ct. 3088 (1986).

---

[12] See Bragg's Billing Records attached to Plaintiff's Motion for Award of Fees.

In *Hensley v. Eckerhart,* 461 U.S. 424, 434, 76 L.Ed.2d 40, 103 S.Ct. 1933 (1983) the Supreme Court emphasized the need for counsel to exercise billing judgment: "Counsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. "In the private sector, 'billing judgment' is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority." *Copeland v. Marshall*, 641 F.2d 880, 891 (D.C. Cir. 1980) (en banc) (emphasis in original).

Counsel should have been able to benefit from the research, briefs and other authorities used in their previous FDCPA lawsuits they filed.  *Hagen v. MRS Associates, Inc.,* 2001 U.S. Dist. Lexis 6789, *21 (E.D. La. 2001).  As in *Hagen,* the facts in this case were simple.  Both legally and factually, the case required minimal development.  There were no dispositive motions on the entire case or trial.  *Id.*  A motion regarding class certification was not filed.  As courts have noted, there is a fine line between harassing tactics and aggressive lawyering.  *Altergott v. Modern Collection Techniques, Inc.,* 864 F.Supp. 778, 782 (N.D. Ill. 1994).

District courts are mandated to eliminate excessive or duplicative time.  *Watkins v. Fordice,* 7 F.3d 453, 457 (5th Cir. 1993); *see Hensley*, 103 S.Ct. at 1939-40.  When a court finds a lack of billing judgment and evidence of excessive amounts of time for particular entries, the court may reduce a fee request by a percentage across the board.  *Johnson v. Choicepoint Services,* 2004 U.S. Dist. Lexis 2009, *7 (E.D. La. 2004).  Specific instances of excessive time may also result in a presumption that other entries were also excessive.  *Id.*  In *Johnson,* the Court mandated a forty percent (40%) across the board reduction in the number of hours.

The case at bar parallels the case of *Jenkins v. General Collection Co., et al,* 2009 U.S. Dist. Lexis 99191 (D. Neb. 2009) [Plaintiff's counsel Bragg was one of the plaintiff's attorneys in *Jenkins*].   The court in *Jenkins* held, "When a plaintiff has achieved only partial or limited success, the lodestar method may yield an excessive amount.  *Id. (citing Hensley,* 461 U.S. at 436).  The *Jenkins* court held, "It is recognized that Plaintiffs' attorneys anticipated that this case would be a class action. Despite many hours invested by many attorneys and support personnel in pursuit of that goal, this case was not a class action." *Id.*  at *8.  A defendant should not have to shoulder the entire financial burden . . . caused by [plaintiff's counsel's] failure to make a reasonable assessment of the value of their case."  *Id. citing Altergott,* 864 F.Supp. at 783.

The *Jenkins* court further held, "The time invested by Plaintiff's attorneys in this case was simply excessive in light of the value of the Plaintiff's claims and the success achieved."  *Id.* The evidence in the *Jenkins* case, just as in this case, did not indicate that the defendants' practices were frequent and persistent or were intentionally abusive or deceptive.  In *Jenkins*, Attorney Bragg and his co-counsel sought total attorney's fees of $419,792.67.  The Court concluded that $50,000, more than twice the combined settlement award for the plaintiffs was a reasonable attorney fee.  This was a recovery of 11.9% of the attorney's fees sought by Attorney Bragg and his co-counsel.

The Court may, based on its own experience and review of similar cases in other jurisdictions, order a substantial, across the board reduction in attorney's hours especially where an item-by-item evaluation is impractical.  *Savino v. Computer Credit, Inc.,* 71 F.Supp.2d 173, 176 (E.D.N.Y. 1999).

The amount of time spent on this FDCPA case is more indicative of an inexperienced attorney first learning the ropes of a FDCPA case, instead of two experienced FDCPA practitioners.

For example, Attorney Bragg allegedly spent 5.1 hours drafting the complaint in this case. Attorney Pittman allegedly spent 4.7 hours drafting and revising the complaint. Attorney Bragg spent 6.4 hours on research and discussion with Attorney Pittman prior to the complaint being filed. Attorney Pittman allegedly spent 7.7 hours researching and in discussion with Attorney Bragg prior to the complaint being filed. Attorney Bragg allegedly spent .3 hours and Attorney Pittman allegedly spent 2.8 hours discussing this case with the individual plaintiff before the complaint was filed. In total, Attorneys Bragg and Pittman spent 28.00 total hours drafting, researching and communicating with each other on one individual's, one claim in which only one issue was disputed and before Defendants were even served with the complaint. As such, Attorneys Bragg and Pittman are asking the Court to order Defendants to pay them a combined $11,947 before Defendants even had knowledge a lawsuit had been filed.

Further, the results of this case do not justify a large award of attorney's fees. Plaintiff's settlement demand,[13] which Plaintiff's counsel never backed away from was as follows:

1.  The case will be certified as a class action as set forth in the Complaint; [Plaintiff did not prevail on this claim];

2.  Defendants will cease to leave telephone messages for Virginia consumers while collecting or attempting to collect consumer debt, in which Defendants fail to state the call is an attempt to collect a debt or is from a debt collector regarding debt that was incurred for personal, family or household purposes; [Plaintiff did not prevail on this claim];

3.  Defendants will cease to leave telephone messages for Virginia consumers while collecting or attempting to collect consumer debt in which Defendants fail to disclose

---

[13] See Plaintiff's October 27, 2009 correspondence attached to Dunn Declaration (Ex. 4).

the identity of the caller and that the call was from a debt collector; [Plaintiff did not prevail on this claim];

4. Defendants will cease to leave telephone messages for Virginia consumers while collecting or attempting to collect consumer debt, in which Defendants' telephone messages imply that legal action had been taken when legal action has not been taken; [Plaintiff did not prevail on this claim];

5. Payment of $1000 to Ms. Randle as statutory damages; [Plaintiff prevailed on this claim];

6. Payment of $5000 to Ms. Randle for her services as class representative; [Plaintiff prevailed on this claim monetarily only];

7. Payment of statutory damages to the class of 1% of each Defendants' net worth, this calculation must be supported by documentation of each Defendants' net worth, pursuant to the FDCPA; [Plaintiff did not prevail on this claim];

8. Payment of statutory damages to the class of 1% of each Defendants' net worth, this calculation must be supported by documentation of each Defendants' net worth, pursuant to the FCCPA; [Plaintiff did not prevail on this claim];

9. Any undistributed monies payable to the class will be distributed as a *cy pres* payment to the Legal Services Corporation of Virginia, for use in consumer representation and advocacy; [Plaintiff did not prevail on this claim]

10. Defendant will bear the costs of Plaintiff preparing and arranging for notice to and administration of the class subject to court approval; [Plaintiff did not prevail on this claim]

In terms of the demands made upon Defendants, Plaintiff's steadfast refusal to entertain any offers except on a class wide basis and the ultimate result obtained by Plaintiff's counsel,

this case epically failed.  Plaintiff's counsel should not be rewarded for their lack of results in this case.

""A reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole."" *Hensley*, 461 U.S. at 440. "Plaintiffs often present multiple claims and theories for relief, each with a range of potential awards, involving numerous challenges to institutional practices or conditions. . . .  Although the plaintiff often may succeed in identifying some unlawful practices or conditions, the range of possible success is vast. That the plaintiff is a '"prevailing party'" therefore may say little about whether the expenditure of counsel''s time was reasonable in relation to the success achieved." *Hensley*, 461 U.S. at 436.

<u>Plaintiff's attorneys' billing was excessive</u>

Defendants submit the following are examples of excessive billing in this case:

<u>Combined Billing for Attorneys Pittman and Bragg</u>

| TASK | ATTORNEY BRAGG | ATTORNEY PITTMAN | TOTAL HOURS |
|---|---|---|---|
| Drafting Complaint | 5.1 | 4.7 | 9.9 |
| Research conducted before Complaint filed and discussions between counsel | 6.4 | 7.7 | 14.1 |
| Communicating with client before suit filed | .3 | 2.8 | 3.1 |
| Drafting, revising and discussing first set of discovery | 4.6 | 3.4 | 8.0 |
| Reviewing Defendants' response to Plaintiff's first set of discovery | 2.8 | 1.2 | 4.0 |
| Attorneys communication with each other through email and telephone | 11.9 | 10.6 (+) | 22.5 |
| Drafting Plaintiff's response to Defendants' Motion for Partial Summary Judgment (Response not filed) | 10.2 | 9.8 | 20.0 |

In addition to the examples previously set forth, Defendants submit the following is further evidence of overly aggressive billing by Attorney Pittman:

| TASK | HOURS |
|---|---|
| Teleconferencing and emailing Attorney Bragg | 10.6 |
| Communicating with Attorney Bragg without differentiating other work performed in conjunction with said communication | 9.3 |
| Communicating with Client throughout the case | 3.8 |
| Researching the Florida Consumer Collection Practices Act | 2.8 |
| Preparing Attorney Fee petition | 17.2 |
| Preparing initial settlement demand | 2.2 |
| Preparing settlement conference memorandum | 9.0 |
| Drafting and reviewing a protective order | 1.70 |
|  |  |

Defendants will address Attorney Bragg's aggressive billing in this case in a section set forth below.

Further, Plaintiff's counsel do not have the luxury of arguing that all claims are inextricably intertwined and as such, Plaintiff's counsel should be entitled to be paid for all work expended on class related issues.  By agreement, the parties specifically excluded this time and Plaintiff's counsel are only permitted to seek recovery for work reasonably spent on the individual Plaintiff's individual claims alone.  *See*, agreement previously set forth above.

The FDCPA is a fee shifting statute.  As previously noted, counsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to

exclude such hours from his fee submission.  Plaintiff's attorneys not only kept the fee meter running at all times, but injected it with unhealthy doses of steroids to seek the maximum amount of attorney's fees possible.  Accordingly, the Court should turn off the meter for Plaintiff's counsel and order a large, across the board reduction in hours commiserate with the *Jenkins* court decision as well as a significant reduction in the hourly rates for Plaintiff's attorneys.  If the Court applies the *Jenkins* standard, Plaintiff's attorneys' recovery would be a maximum of $8,037.04 (11.9% of $67,538.19).  Alternatively, since Plaintiff only prevailed on 20% of her demands and claims made against Defendants, Plaintiff's attorneys, at the most should be limited to a maximum of $13,507.64 (20% of $67,538.19).

However, for reasons set forth hereinafter, Defendants urge the Court to award a lesser amount.

<u>The work performed by Attorney Bragg was unnecessary for this litigation, was inflated and his time should be excluded completely.</u>

Plaintiff bears the burden to not only utilize billing judgment but to substantiate the necessity of having multiple attorneys work on similar matters.  *Joseph v. Publix Supermarkets, Inc.,* 2004 U.S. Dist. Lexis 30889, * 14 (S.D. Fla. 2004) *citing Hensley,* 461 U.S. at 434. Plaintiff failed to address why Attorney Bragg's participation in this case to establish one issue on Plaintiff's individual claims was necessary, let alone reasonable.

Attorney Bragg claims to have incurred 51.1 hours prosecuting this matter and seeks to have this court impose an hourly rate of $465.00 per hour for his efforts.  Attorney Bragg's participation in this case was not reasonable, and in fact, was completely unnecessary since Attorney Pittman was sufficiently adequate to zealously represent Plaintiff's individual interests.

With regard to the expertise of Attorney Pittman, Attorney Pittman represented to the Court, "Most of the § 1692 litigation that has taken place in the District Courts in Virginia has

been undertaken by Mr. Pittman, one of the undersigned counsel. . .."[14] Attorney Pittman included in Plaintiff's motion the glowing statements regarding Mr. Pittman and his expertise made by Magistrate Judge Dohnal in the case of *Jones v. Robert Vest,* 2000 U.S. Dist. Lexis 19026 *12 & 13 (E.D. Va. 2000). Attorney Pittman set forth his expertise and experience in his curriculum vitae attached as an exhibit to Plaintiff's motion. Clearly, Attorney Pittman had sufficient expertise to prosecute a garden variety FDCPA case in which no actual damages were even alleged, no abusive conduct was alleged and in which there was dispute as to one issue alone.

Plaintiff cannot in good faith represent to this Court that Plaintiff's individual claims involved complex fact questions or subjective interpretations of the FDCPA or that Plaintiff's claim was something other than a garden variety FDCPA complaint involving one technical violation of the FDCPA.

Nowhere in Plaintiff's Motion or Memorandum does Plaintiff set forth the reasons supporting the necessity of employing Attorney Bragg, an attorney from Chicago, Illinois who specializes in FDCPA class based litigation or what specialized expertise Attorney Bragg contributed to resolving the one issue in dispute that Attorney Pittman could not resolve.

The party seeking an award of attorney's fees bears the burden of demonstrating that the request is reasonable. *Woodbridge v. Marlene Indus. Corp.,* 898 F.2d 1169, 1176 (6th Cir. 1990). Since Plaintiff failed to carry this burden, Attorney Bragg's time should be disregarded by the Court.

Attorney Bragg's hours should also be completely disregarded by the Court since factual questions exist regarding the number of hours worked by Attorney Bragg and whether those hours were related to Plaintiff's individual claims.

---

[14] See Plaintiff's Memorandum at 14

Issues regarding hours can arise where (1). there are factual questions about whether the lawyer actually worked the number of hours claimed, (2). there are legal questions about whether the work performed was related to the claims on which the plaintiff prevailed, and (3). there are mixed questions of law and fact regarding whether the attorney spent too much or duplicitous time on certain matters. *Coulter v. Tenn.,* 805 F.2d 146, 150-151 (6th Cir. 1986). With regard to Attorney Bragg's participation in this case, these issues are present in the case at bar.

As Defendants previously set forth, Attorney Bragg allegedly worked 11.8 hours on research and preparing the complaint in this case. Defendants dispute that an attorney with the experience and expertise of Attorney Bragg would have required this much time to research and then draft a complaint alleging H & P violated § 1692e(11) by refusing to identify itself as a debt collector.

The hours allegedly incurred drafting Plaintiff's first set of discovery is particularly egregious. With regard to drafting and revising the first set of discovery[15] sent to Defendants,[16] Attorney Bragg allegedly spent 4.6 hours, and Attorney Pittman spent 3.4 hours. However, in or about December 2008, Attorney Bragg sent nearly identical discovery in another case, *Elsa Anchondo v. Anderson, Crenshaw & Associates, L.L.C.*, Civil Action No. 1:08-CV-202-WJ-LCS filed in the District Court for the District of New Mexico.[17]

Even a cursory review of the two sets of discovery indicate the format of the discovery is exactly the same, the definitional section is largely the same, each set of discovery begins with requests for admission seeking information regarding class size and class issues. This is followed in each set by interrogatories utilizing identical language seeking information to support class litigation. Finally, on both sets of discovery, identical requests for production are

---

[15] A copy of this discovery is attached to Dunn Declaration (Ex. 6).
[16] See Time records filed with Plaintiff's Memorandum.

included save and except for identification of individual plaintiffs and the manner in which the voicemail messages were referred in each litigation.  Many of the interrogatories and requests for production are word for word identical, save and except for changing the name of the defendants.

This "cut and paste" job could have been accomplished by a law clerk or paralegal in substantially less time.  For two, experienced FDCPA plaintiff's attorneys to bill eight (8) full hours reviewing the discovery template utilized by one of the attorney in another case less than one year before and then changing a few words to adapt it to the case at bar stretches the boundaries of credibility.

Other examples of "ambitious" billing by Attorney Bragg includes: spending approximately 11.0 hours communicating with Attorney Pittman; spending 9.4 hours researching, drafting and revising Plaintiff's Response to Defendants' Motion for Summary Judgment, which said response was never filed with the Court; spending 1.8 hours reviewing, researching and discussing a protective order which Defendants were required to file because Plaintiff refused to enter into an agreement regarding H & P's proprietary information.  The Court verbally granted Defendants' request to have a protective order entered regarding Defendants' proprietary information.

Further, at least one other court has questioned the credibility of similar attorney's fees declarations submitted by Attorney Bragg.  The court in *Noelle Johnson v. Credit International, Inc., et al,* 2005 U.S. Dist. Lexis 21513 (N.D. Ca. 2004) stated, ". . . this Court finds that the declarations of Plaintiff's attorneys simply lack credibility in certain respects. For example, Mr. Bragg's custom was to itemize multiple activities that took place on the same day. Then, because his law firm rounds up to the nearest tenth of an hour, the result is that an activity such as

---

[17] A copy of said Discovery is attached to the Dunn Declaration (Ex. 5).

preparing a fax of a document is billed for six minutes on top of preparing the document itself for 54 minutes."

Similar activity is noted in the case at bar in that Attorney Bragg is attempted to charge work performed at .1 hour on twenty-four (24) separate occasions for tasks such as "reviewing an order granting a motion pro hac vice for the United States and an Order setting telephone conference."  Many of these "tasks" would have entailed in all reasonable likelihood, less than 30 seconds to accomplish.  Yet, the billing machine rolled on.

Because Plaintiff did not seek to justify why it was necessary to have Attorney Bragg participate in this case, since Attorney Bragg's participation in this case was in fact, not necessary, and since some of Attorney Bragg's alleged time was questionably incurred at best, the Court should disregard Attorney Bragg's time completely.

<u>The hourly rates sought by Attorneys Bragg and Pittman are excessive.</u>

Even if the Court is not inclined to exclude Attorney Bragg completely, Attorney' Bragg's hourly rate should be significantly reduced. Attorney Bragg seeks to be paid an hourly rate of $465.00 for his legal work.  Attorney Bragg's hourly rate for this case is grossly excessive and should be reduced accordingly.  Similarly, Attorney Pittman's requested hourly rate of $425.00 is excessive for this case and should be reduced as well.

Specialized counsel from areas where the prevailing rates are higher can only be compensated at the higher rate if there is a lack of suitable, experienced local counsel.  *Graham*, 2004 U.S. Dist. Lexis 31029, *15.  Not only did Plaintiff fail in her burden to show that there is a lack of suitable, experienced local counsel, but this Court has noted, Attorney Pittman, an attorney in this very case, has reasonably comparable skill, experience and reputation as Attorney Bragg.

The concept of reasonableness, the statutory centerpiece of the FDCPA fee award implies that the fee calculation is inextricably linked to the facts and circumstances of the underlying litigation. *Carroll v. Wolpoff & Abramson,* 53 F.3d 626, 628-29 (4th Cir. 1995). "It should be clear, then, that [the FDCPA] does not mandate a fee award in the lodestar amount. If the concept of [the court having] discretion is to have any meaning at all, it must encompass the ability to depart from the lodestar in appropriate circumstances. *Id.* at 629. There the court of appeals concluded that the district court's reduction of the $9,783.63 attorneys' fee requested to $500.00 in an FDCPA case was not an abuse of discretion.

Attorney Bragg's hourly rates appear to be far in excess of the prevailing market rate in the community for this type of case. Courts considering an award of attorney's fees in FDCPA cases have as a matter of course and using the Johnson factors established hourly rates far less than that sought by Plaintiff's counsel. *Donahue v. Lamocha,* 781 F.Supp. 188 (W.D.N.Y. 1991) ($95.00 per hour); *Lee v. Thomas & Thomas,* 109 F.3d 302 (6th Cir. 1997) ($100.00 per hour). Further, the rate of $200.00 per hour is in line with other FDCPA cases. *Savino v Computer Credit, Inc.,* 71 F.Supp.2d 173, 177 (E.D.N.Y. 1999)(reasonable rate is $200.00 per hour); *Withers v. H.R. Eveland,* 997 F.Supp. 738, 739 (E.D.Va. 1998)($200.00 per hour); *Hensley v. Berks Credit & Collections, Inc.,* 1997 U.S.Dist. Lexis 18220 (E.D.Pa. 1997)($200.00 per hour awarded, despite the court's opinion that the rate is too high for work performed on relatively simple claims, because defense counsel did not challenge the rate); *Thorpe v. Collection Information Bureau, Inc.,* 963 F.Supp. 1172, 1173-4 (S.D.Fla. 1996)($195.00 per hour was reasonable); *Yahoo!, Inc. v. Net Games, Inc.,* 329 F.Supp.2d 1179, 1188-92 (N.D.Cal. 2004)($190.00 per hour was a reasonable hourly rate); *Cooper v. Sunshine Recoveries, Inc.,* 2001 WL 740765, *12 (S.D.N.Y. 2001)("recent cases in New York City have awarded fees in FDCPA cases at rates of $175. and $200 per hour"); *In Re Martinez,* 266 B.R. 523 (S.D.Fla.

Bkrptcy 2001)($200 per hour was an appropriate hourly rate for FDCPA litigation); *Hagen,* 2001

U.S.Dist. Lexis 6789 at *9 (awarding $200.00 per hour).

Since counsel will not be receiving compensation directly from clients, but rather, they

must depend on courts to determine their reasonable hourly market rate, Plaintiff's counsel

wholly fails to set forth the relevant "market rate" in their application.

Attorney Bragg in his declaration stated, "I request compensation at $465/hr, for my

work in this case.  My standard billing rate is $465.00 per hour."  Mr. Bragg does not state that

any of his own clients have ever agreed to pay him an hourly rate of $465.00 per hour.  ""In the

private sector, 'billing judgment' is an important component in fee setting. It is no less important

here. Hours that are not properly billed to one's *client* also are not properly billed to one's

*adversary* pursuant to statutory authority.""  *Copeland v. Marshall*, 641 F.2d 880, 891 (D.C. Cir.

1980).

Further, Attorney Bragg's reliance on *Defenbaugh v. JBC & Associates,* 2004 U.S. Dist.

Lexis 16256 (N.D. Cal. 2004) as support for an hourly rate of $435.00 was criticized by the

*Johnson* court wherein the court stated, " . . .Notwithstanding the outcome of Defenbaugh,

recently reported case law from a variety of jurisdictions strongly suggests that these amounts

are outside the range of market rates in the Northern District." *Johnson,* 2005 U.S. Dist. Lexis

21513, *11. "The Court recognizes that rates for legal work in San Francisco tend to be at the

high end of national averages.  Therefore, the Court finds that the highest rate cited above, $250,

is appropriate for both of Plaintiff's attorneys." *Id.*  Just as the Court noted in the *Johnson* case,

there were numerous entries submitted by Attorney Bragg in the instant case wherein Attorney

Bragg entered an entry for one tenth of an hour for work largely spent on reviewing orders,

emails or letters the vast majority of which were one page.  Attorney Bragg lists twenty-four (24)

entries of .1 hour for this type of activity.  The *Johnson* court noted, "The Court finds this

method of billing to be unreasonable and excessive." *Id.* at *10. Pursuant to the Court's discretion to make percentage cuts, the *Johnson* court further reduced Mr. Bragg's billings by a total of five (5) hours on account of "this opaque record keeping." *Id.*

There are many Court that have awarded Attorney Bragg significantly less than his requested $465 per hour rate and sometimes he has even requested significantly lower rates. (*See, Clark v. Bonded Adjustment Co., Inc.,* (E.D. Wash. Nov. 23, 2004) case no. CV-394-FVS, slip op., pp. 8 – 9 (awarding an hourly rate for Mr. Bragg of $225 for legal services to prosecute a case); *Wingate v. South San Francisco Scavenger Co. Inc.,* (N.D. Cal. Mar. 3, 2003) case no. C 01-4334 VRW, slip op. (the court concluded that Mr. Bragg's hourly rate should be $146 per hour for services in an FDCPA case); *Cope v. Duggins,* 203 F. Supp.2d, 650, 655 (E.D. La. 2002) (Attorney Bragg indicated his hourly rate is $300 but requested the court approve fees for him at 42% of $300 per hour or 126 per hour).

Similarly, Attorney Pittman's requested hourly rate is excessive for this simple, non-complicated, garden variety FDCPA case. An attorney's reasonable hourly rate is determined by comparing the requested rate with that "prevailing in the community for similar services of lawyers with reasonably comparable skill, experience and reputation." *Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) (citation omitted); *Blum*, 465 U.S. at 895 n.11. Several of the *Johnson* factors merits a decrease in the hourly rate sought by Attorney Pittman. *See generally, Christensen vs. Stevedoring Servs. of America,* 557 F.3d 1049, 1053 (9th Cir. 2009)(listing factors a court may consider when awarding fees). First, Plaintiff does not allege an ongoing professional relationship with Attorney Pittman such that a higher hourly rate would be merited. *Id.* Second, Attorney Pittman had ample time to prosecute the case, and there is no evidence, such as requests to continue deadlines, that he struggled under time pressure. *Id.* Third, Plaintiff's case was not so demanding of time that it precluded Attorney Pittman from

accepting other employment. *Id.* Finally, the amount involved was minimal and the case settled for a small sum. *Id.*.

The reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services provided by lawyers of reasonably comparable skills, experience, and reputation. *Norman v. Housing Authority*, 836 F.2d 1292, 1299 (11th Cir. 1988).

Courts may looks to skill as the ultimate determinate of compensation level because experience and reputation are a mirror image of skill. *Norman*, 836 F.2d at 1300. Skill is evidenced by an attorneys' initial case assessment, continuing negotiation and settlement attempts, persuasiveness, and other fundamental aspects of organization and efficiency. *Norman*, 836 F.2d at 1300 - 1301. Organization means that counsel plans effective discovery devices and does not use them randomly or for the mere purpose of going through established routines. Efficiency means doing exactly what needs to be done in a minimum time. *Norman*, 836 F.2d at 1301. Legal skill, therefore, correlates to a knowledge of both trial practice and substantive law. *Norman*, 836 F.2d at 1301. Proficiency should yield efficiency, and the district court has ample discretion to discount the import of counsel's expertise. *Varner v. Century Finance Company, Inc.*, 738 F.2d 1143, 1149 (11th Cir. 1984).

This non-complex case did not require an attorney charging at the rate of $465 and $425 an hour respectively. It did not require an inordinate amount of time or the unique knowledge that a seasoned, experienced FDCPA attorney possesses to prosecute a case in which one issue was in dispute. Accordingly, Plaintiff's counsels' hourly rates are excessive and the plaintiff's individual claim could have been prosecuted by an attorney charging at an hourly rate of no more than $250.00 per hour.

<u>Conclusion</u>

For the reasons set forth hereinabove, Plaintiff's Application for Fees should be substantially reduced. Attorney Bragg's participation in the case was not necessary and Plaintiff did not sustain her burden of proof to show that Attorney Bragg was needed in this case. Further, the work allegedly expended by Attorney Bragg is suspect particularly in light of the simple facts in this case and that this case called for form pleadings and discovery.

Similarly, the work allegedly performed by Attorney Pittman was excessive. This case involved attempting to establish one issue in dispute. Plaintiff's attorneys waived all other issues. As such, Defendants assert that a reasonable fee for Plaintiff's attorney in this case is no more than equal to the amount Defendants agreed to pay Plaintiff, to wit: $6,000.00. Plaintiff's attorneys' time records indicate an overly aggressive billing policy, excessive amount of work performed, double billing, attempting to have secretarial and clerical work performed and charged at an attorney's hourly rate and unnecessary amount of work performed in this relatively simple FDCPA case. Plaintiff's requested fees should be severely reduced. Defendants pray for such other and further relief, at law or in equity to which Defendants may be duly entitled.

Respectfully submitted,

/s/ William Y. Durbin_____
William Y. Durbin (VA Bar No. 74850)
Winston & Strawn LLP
1700 K Street, NW
Washington, DC  20006
Tel:    (202) 282-5630
Fax:    (202) 282-5100
email:  wdurbin@winston.com


Steven R. Dunn (admitted *pro hac vice*)
Tx. State Bar No.  06252250

North Central Plaza III, Suite 250

12801 North Central Expressway
Dallas, Texas 75243
Tel:     (214) 692.5533
Fax:     (214)  692.5534
email:  sdunnfirm@aol.com


**ATTORNEYS FOR DEFENDANTS**

## *CERTIFICATE OF SERVICE*

I hereby certify that on April 19, 2010, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following persons:

Dale Pittman
The Law Office of Dale Pittman
The Eliza Spotswood House
112-A West Tabb Street
Petersburg, VA 23803-3212

O. Randolph Bragg
Horwitz Horwitz & Associates
25 E Washington Street, Suite 900
Chicago , IL 60602

/s/ William Y. Durbin_____
William Y. Durbin (VA Bar No. 74850)
Winston & Strawn LLP
1700 K Street, NW
Washington, DC  20006
Tel:    (202) 282-5630
Fax:    (202) 282-5100
email:  wdurbin@winston.com