**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

**DANIELLE RANDLE,**

        **Plaintiff,**

**v.**                          **Civil Action No.  3:09cv608**

**H&P CAPITAL, INC., et al.,**

        **Defendants.**

**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR AN AWARD**
**OF ATTORNEYS' FEES AND COSTS**

Plaintiff Danielle Randle submits her Reply Memorandum in response to the

Memorandum in Opposition to Plaintiff's Attorneys' Fees Application filed by Defendants H&P

Capital, Inc. Gary Robert Henrion, and Noel Louis Pooler.  (Hereinafter "Opposition").

Document 37. Defendants have extended this litigation, which arose from a ceaseless series of

harassing telephone calls, by (1) their challenge to the constitutionality of the Fair Debt Collection

Practices Act, 15 U.S.C. §§1692 *et seq.* (FDCPA), and (2) their unjustified delay during settlement

negotiations in producing documentation of their impecunity.

Defendants' claim that this case was nothing "other than a garden variety FDCPA

complaint involving one technical violation of the FDCPA," Opposition, p. 15[1], ignores not only

the facts but the relevant law. Throughout the pendency of this case, the claims in what Defendants

call "this molehillian case," Opposition, p. 5, were the subject of enormous collection industry

attention, as shown by Exhibit A, an October 7, 2009 presentation by national FDCPA defense

---

[1]  Page numbering refers to the numbering assigned by CM/ECF at the upper right corner of the
page.

counsel John H. Bedard, Jr., *Within the Law: Cell Phone, Email, Website, and Voicemail Communications*, covering, among other things, the 15 U.S.C. § 1692e(11), "*Foti*" violations at issue herein, Exhibit B, a November 13, 2009 American Collector's Association *Fastfax* entitled *Leaving Voice Mail Messages for Consumers*, and Exhibit C, the announcement of a December 18, 2009 American Collector's Association teleseminar entitled *"Communication With Consumers: Compliance Hot Topics*, providing an opportunity for ACA members to "(L)earn how the law affects your business practices," because "(T)he legal consequences of leaving messages for consumers in an attempt to collect a debt have received significant attention from courts across the country." See also Exhibit D, a March/April 2008 article from CollectionAdvisor.com, *How Foti Will Evolve Over the Next Five Years*, addressing compliance measures to avoid the conduct defended by Defendants herein.

The FDCPA is a strict liability statute. As this Court stated in <u>Turner v. Shenandoah Legal Group, et al.</u>, 2006 U.S. Dist. Lexis 39341, *8 (E.D. Va. 2006), citing the Fourth Circuit in <u>U.S. v. National Financial Services, Inc.</u>, 98 F.3d 131 (4th Cir. 1996)

> The purpose of the FDCPA, as set forth by statutory mandate, is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." *15 U.S.C. § 1692*. Such a purpose is applicable whether or not a valid debt exists where abusive practices are prohibited in either case. <u>Baker v. G.C. Servs. Corp.</u>, *677 F.2d 775, 777 (9th Cir. 1982)*. Furthermore, the FDCPA, like other public welfare legislation, is a strict liability statute. <u>U.S. v. Nat'l Fin. Servs., Inc.</u>, *98 F.3d at 139*. It is enough that a practice or statement has the potential to mislead the consumer because "evidence of actual deception is unnecessary." <u>U.S. v. Nat'l Fin. Servs., Inc.</u>, *98 F.3d at 139*.

As another court put it when addressing similar claims:

> Notably, "[t]he FDCPA establishes a strict liability standard; a consumer need not show [an] intentional violation of the Act by a debt collector to be entitled to damages." <u>Castro v. A.R.S. Nat'l Servs., Inc.</u>, *2000 U.S. Dist. LEXIS 2618, 2000*

*WL 2643 10, \*2 (S.D.N.Y. Mar. 8, 2000)* (citing *Russell v. Equifax A.R.S., 74 F.3d 30, 33 (2d Cir. 1996)*). A single violation of the Act is sufficient to subject a debt collector to liability under the Act. Id.

*Drossin v. National Action Financial Service, Inc.*, 641 F.Supp. 2d 1314, 1317 (S.D. Fla. 2009).

Proof of only one violation is sufficient to support judgment for plaintiff. *Russell v. Equifax A.R.S.*, 74 F.3d 30 (2d Cir. 1996). *Bentley v. Great Lakes Collection Bureau, Inc.*, 6 F.3d 60 (2d Cir. 1993). Because the FDCPA is a strict liability statute, there are no unimportant violations. *Bentley*, 6 F.3d at 63 (there are no nonactionable violations); *Taylor v. Perrin, Landry, deLaunay & Durand*, 103 F. 3d 1232 (5th Cir. 1997) (same). The FDCPA is liberally construed in favor of the consumer to effectuate its purposes.

In an attempt to curtail Defendants' repeated violations of the FDCPA, Plaintiff chose to bring this case as a class action. The undersigned counsel filed *Mercer v. H&P, John Joe, a/k/a "Robert Anthony," Noel Pooler, and Gary Henrion*, Civil Action No. 3:09cv111, in this Court on February 27, 2009. The *Mercer* Complaint is attached, marked Exhibit E. That case, based on allegations similar in nature to those herein, alleges in the Introduction the following:

> H&P Capital, Inc. systematically deceives and abuses consumers, already victimized by Payday Lenders, and in so doing puts debt collectors who comply with the Fair Debt Collections Practices Act at a distinct competitive disadvantage. It is the policy and practice of H&P Capital to violate the Fair Debt Collections Practices Act and the Florida Consumer Collection Practices Act.

The undersigned counsel represented another consumer, an elderly woman who is now deceased, who was similarly victimized by Defendants during their efforts to collect on a payday loan debt, as shown by the redacted communications and draft Complaint that are attached hereto as Exhibit F. In addition to these cases, counsel was aware of the then recently filed case *Rachel E. Stewart v. H&P Capital, Inc.*, Civil Action No. 1:09-cv-190, from the Western District of New York

(Buffalo), a copy of the Complaint from which is attached as Exhibit G, and the then recently filed

case *Paul Cimino v. H&P Capital, Inc., Noel Pooler, Gary Henrion, and Tammy Mackey*, Civil

Action No. 1:09.cv.1254, from the District of New Jersey, a copy of the Complaint which is

attached as Exhibit H.   Each of these cases allege, among other things, the failure to give the

required 15 U.S.C. § 1692e(11) notice disclosures.  Each allege the use of telephone harassment

and abuse in connection with the collection of debts, in violation of 15 U.S.C. § 1692d.  Faced with

a repeat offender collection agency whose similar collection misconduct resulted in Ms. Randle

having sought the assistance of an attorney, Plaintiff elected to file this case as a class action.

## I.   **ARGUMENT**

"In order to encourage able counsel to undertake FDCPA cases, as Congress intended, it is

necessary that counsel be awarded fees commensurate with those which they could obtain by

taking other types of cases . . . . Paying counsel in FDCPA cases at rates lower than those they can

obtain in the marketplace is inconsistent with the congressional desire to enforce the FDCPA

through private actions, and therefore misapplies the law." *Tolentino v. Friedman*, 46 F.3d 645

(7th Cir. 1995).  To satisfy this goal set by Congress Plaintiff should be awarded attorneys' fees for

the time expended by her counsel at the hourly rates requested and previously approved by the

Eastern District of Virginia.

Defendants argue that Plaintiff's attorneys' fees should be reduced because this FDCPA

case is not complex.  Defendants begin their pejorative laced opposition memorandum with the

following quote that they attribute to Justice Sotomoyor:

"Congress wrote this statute to have a cottage industry litigation"

While Plaintiff has been unable to locate this quote attributed to the January 23, 2010 oral

argument in the Supreme Court's most recent FDCPA case, Plaintiff interprets this quote as being

intended to convey some form of negative connotation with respect to lawyers who assume the Congressionally intended role of "Private Attorneys General" by representing consumer debtors like Ms. Randle who have been aggrieved by debt collectors who, like the Defendants, ignore the statutory protections designed to protect consumers from debt collection overreaching and to prevent debt collectors who obey the law from being competitively disadvantaged.

In any event, Defendants were mistaken to suggest that attorneys' fees should be reduced because this FDCPA case is not complex,[2] gambling as they did that the Supreme Court would on a later date offer support for this argument. As it turns out, the U.S. Supreme Court subsequently characterized the FDCPA as "a comprehensive and complex federal statute." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA,* --- S.Ct. ---, 2010 WL 1558977, *7 (April 21, 2010).  If this case was not complex, why then did Defendants move for summary judgment (Document numbers 7, 17, and 18) on the basis that the FDCPA was unconstitutional, necessitating expenditure of time and attention by the Court, the Attorney General, and the Department of Justice, as well as defensive briefing by the Plaintiff? See, *e.g.*, the Court's December 17, 2009 Order, Docket No. 15. Why did Defendants claim poverty but repeatedly delay producing evidence of their respective net worths? Defendants had the ability to resolve this litigation from its outset.  Instead, Defendants persisted in their contention that the FDCPA was unconstitutional, thereby requiring the involvement of the U.S. Attorney.  When they finally shifted to settlement mode, Defendants repeatedly delayed providing evidence to demonstrate their purported net worths.  "While

---

[2] "Plaintiff cannot in good faith represent to this Court that Plaintiff's individual claims involved complex fact questions or subjective interpretations of the FDCPA or that Plaintiff's claim was something other than a garden variety FDCPA complaint involving one technical violation of the FDCPA." Opposition, p.14.  "This non-complex case did not require an attorney charging at the rate of $465 and $425 an hour respectively. It did not require an inordinate amount of time or the unique knowledge that a seasoned, experienced FDCPA attorney possesses to prosecute a case in which one issue was in dispute. Accordingly, Plaintiff's counsels' hourly rates are excessive and the plaintiff's individual claim could have been prosecuted by an attorney charging at an hourly rate of no more than $250.00 per hour."  Opposition, p. 22.

[defendant] is entitled to contest vigorously [plaintiff's] claim, once it does so it cannot then complain that the fees award should be less than claimed because the case could have been tried with less resources and with fewer hours expended." *Henson v. Columbus Bank & Trust Co.*, 770 F.2d 1566, 1575 (11th Cir. 1985). Here it was Defendants' litigation tactics that required Plaintiff's counsel to expend the attorneys' time and expense sought to be recovered by the present motion. Reducing Plaintiffs' lodestar based request for an award of attorneys' fees as Defendants argue would hinder consumers in obtaining legal representation on claims of violation of the FDCPA.

### A.   LIKE DEFENDANTS, PLAINTIFF MAY BE REPRESENTED BY TWO ATTORNEYS.

Defendants complain of Plaintiff's representation by two attorneys and their communication with each other.  Involving a second attorney is common in federal litigation and was prudent in this matter where Defendants challenged the constitutionality of the FDCPA. "Counsel may certainly solicit the assistance of other lawyers in working on a case, however, and the time spent by all lawyers on a litigation can be billed so long as the hours claimed are not duplicative." *Davis v. City and County of San Francisco*, 976 F.2d 1536, 1544 (9th Cir.1992). Also, see: *Bouman v. Block*, 940 F.2d 1211, 1236-37 (9th Cir. 1991); *Haak v. Hults Ford-Mercury, Inc.*, 79 F.Supp. 2d 1020, 1023 (W.D.Wis. 1999); *Lenihan v. City of New York*, 640 F.Supp. 822, 825 (S.D.N.Y. 1986); *Pierce v. F.R. Tripler & Co.*, 770 F.Supp. 118, 122 (S.D.N.Y. 1991). Indeed, it has been held to be an abuse of discretion to limit fees to only one attorney. *A.J. By L.B. v. Kierst*, 56 F.3d 849, 863-64 (8th Cir. 1995); *Ramos v. Lamm*, 713 F.2d 546, 554 (10th Cir. 1983).

Retention of two attorneys to represent a party is the norm for federal court litigation.

"Use of more than one lawyer is common in legal practice.  The City itself hired and paid two lawyers to handle many parts of this proceeding; the market test

suggests the propriety of plaintiff's lawyers proceeding similarly. Consultation among lawyers ensures that they do not overlook significant facts or inquiries. Two lawyers are the minimum in much private litigation."

*Bohen v. City of East Chicago*, 666 F.Supp. 154, 157 (N.D.Ind. 1987) Seventh Circuit Judge Easterbrook, sitting in the district court by designation.

Defendants are represented by two attorneys, one from Texas and one from the Washington, DC office of a Chicago based law firm. The United States of America was also represented by two attorneys.  Plaintiff was prudent to engage the services of two attorneys in this case.

### B.     THE TIME EXPENDED BY PLAINTIFF'S COUNSEL WAS REASONABLE AND NECESSARY.

Defendants complain that the time expenditure by Plaintiff's counsel was excessive. Opposition, pp. 12-14 of 25. "Time spent by two attorneys on the same general task is not, however, *per se* duplicative." <u>Rodriguez-Hernandez v. Miranda-Velez</u>, 132 F.3d 848, 860 (1st Cir. 1998).

The party opposing a fee award under the FDCPA and other fee shifting statutes deprives the court of the ability to exercise discretion in adjusting the fee award when it fails to set forth its dispute with the requisite specificity. <u>Nelson v. Select Financial Services, Inc.</u>, 2006 U.S. Dist. Lexis 42637, * 8-9 (E.D. Pa. 2006). Defendants do not itemize the entries by date, but rather lump their calculation of the time spent on various (their own self-titled) activities. For example, Defendants fault counsel for spending 3.1 hours in consultation with Plaintiff before filing suit. This makes it impossible to determine which entries Defendants are attacking. Defendants cannot of course be contending that no time should have been spent on these categories, *e.g.* – "Drafting Complaint" or "Communicating with client before suit filed." Each category is necessary in any litigation. If Defendants argue that no time should be spent in consultation with a plaintiff before

an action is filed in federal court, or any court, then that argument must be rejected out of hand.

Since Defendants do not say which particular time entries within the 3.1 hours spent in

consultation with Ms. Randle before suit was filed, there are no specific time entry objections

before the Court, and "(t)he court may not reduce an award *sua sponte;* rather, it can only do so in

response to specific objections made by the opposing party." *Interfaith Community Organization*

*v. Honeywell Intern., Inc.*, 426 F.3d 694, 711 (3d Cir. 2005).

   Drafting Complaint. Defendants left multiple telephone messages with three different

forms of content for Ms. Randle.  The recorded time was needed to listen to and evaluate each

message and to prepare the Complaint.  In 2007, in the face of a similar argument Judge Wilson

ruled as follows:

> Croy's fee request is based upon her counsel's hourly billing rate of $375, and an hourly paralegal rate of $90. The defendants do not disagree with the $ 375 hourly rate, but dispute the number of hours for which Croy's attorney seeks compensation. Specifically, the defendants believe that Croy's attorney has billed excessive hours for his preparation of the complaint ….
> …
> Taking into account the *Johnson* factors, the 4.5 hours by Croy's attorney and 1.6 hours of paralegal time spent preparing the complaint appears to be a reasonable calculation considering the time and labor necessary to investigate and draft the multiple-claim complaint and factoring in counsel's expertise and experience in this area of the law.

*Croy v. E. Hall & Associates, P.L.L.C.*, 2007 U.S. Dist. LEXIS 14830, * 4-5. (W.D. Va. 2007).

   Research conducted before Complaint filed and discussions between counsel. This time

was necessary to review and evaluate the facts of the present case and the cases addressing

telephone messages as violations of 15 U.S.C. §§1692d(6), e, e(2)(A), e(5), and e(10).

   Communicating with client before suit filed This time expended in discussions with Ms.

Randle was, of course, necessary to develop the facts of the case, explain the nature of the lawsuit,

the duties and responsibilities of the plaintiff, the likely progression of the litigation, and the possible remedies. To spend fewer than 3.1 hours in consultation with one's client before filing a lawsuit in federal court might well result in justifiable criticism of a plaintiff's lawyer.

Drafting, revising and discussing first set of discovery The unique facts of this case necessitated the time expended in order to address the practices and procedures of Defendants in leaving three different telephone messages, the duties and responsibilities of the individual Defendants, the net worth of each Defendant, any bona fide error defenses, etc. Defendants complain that discovery similar to that served in *Anchondo v. Anderson, Crenshaw & Assoc.* was used here.  Opposition, pp. 16-17 of 25. In fact the *Anchondo* court compelled defendant therein to respond to that discovery. *Anchondo v. Anderson, Crenshaw & Associates, L.L.C.*, 256 F.R.D. 661 (D.N.M. 2009). The use of previously developed discovery by Plaintiff's counsel demonstrates efficiency.  Rather that preparing such documents from scratch for this new case, Plaintiff's counsel were able to revise and update other discovery to conform to the facts presented by this case.  Thus, Defendants benefitted from the efficiencies of Plaintiff's counsel by a reduction in the attorney time required to prepare the discovery served here. The reported time was needed in order to tailor the *Anchondo* discovery to the unique facts of Defendants' practices presented by this case.

Reviewing Defendants' response to Plaintiff's first set of discovery. In every case it is necessary to review the opposing parties' discovery responses to learn the information provided, whether the responses were complete, whether discovery motion(s) would be necessary, as well as to determine what additional discovery was needed. The four hours that Plaintiff's counsel billed was needed to accomplish these tasks.

Attorneys' communication with each other through email and telephone. Co-counsel must

communicate between themselves regarding the preparation, development, research, and strategy
of the litigation. Presumably, defense counsel have communicated with each other regarding this
litigation. As pointed out above, Defendants have not itemized these entries by date so it is
impossible discuss the communications by date, topic, subject matter, etc.  The time requested was
needed for Plaintiff's counsel to discuss the preparation, development, research, and strategy of
this litigation. Defendants' litigation tactics required Plaintiff's counsel to communicate by
telephone and email in order to plan and coordinate their strategy and efforts in countering
Defendants' defense and negotiating a successful conclusion.  "Careful preparation often requires
collaboration and rehearsal, and the court should not reward defendants for their vehement
`Stalingrad defense,' . . .  " _Rodriguez-Hernandez v. Miranda-Velez_, supra 132 F.3d at 860. "Even
duplicative work, however, is not a justification for cutting a fee, unless 'the lawyer does
unnecessarily duplicative work.' _Moreno v. City of Sacramento,_ No. 06-15021, 534 F.3d 1106,
1113 (9th Cir.2008)." _Mendez v. County of San Bernardino_, 540 F.3d 1109, 1129 (9th Cir. 2008).

Drafting Plaintiff's response to Defendants' Motion for Partial Summary Judgment
(Response not filed). The reported time was necessary for Plaintiff's counsel to review
Defendants' constitutional challenge to the FDCPA (Document Numbers 5, 17, and 18), research
the cases, strategize the opposition, and begin and almost complete preparation of Plaintiff's brief
in opposition. Plaintiff's lawyers prepared a nearly complete opposition memorandum, a copy of
which is attached as Exhibit I.  The memorandum was not completed and filed as the result of
arrangements for an extension made during the settlement conference process. See Docket Entry
of January 19, 2010 of Settlement Conference before Magistrate Judge Dennis W. Dohnal, and
Docket No. 30. Settlement was reached before Plaintiff's brief became due.  Presumably the U.S.
Attorney's office also began working on the government's brief. In their argument to reduce

Plaintiff's attorneys' fees, Defendants rely on _Jenkins v. General Collection, Co._, 2009 WL

3631014 (D.Neb., Oct. 26, 2009). Opposition, p. 9 of 25.  _Jenkins_, however, is inapposite to the

facts here. In _Jenkins_, the denial of class certification was unsuccessfully appealed to the U.S.

Court of Appeals for the Eight Circuit pursuant to Rule 23(f) and the district court issued six

decisions which appear on Westlaw. _Jenkins v. General Collection, Co._, 2009 WL 3631014

(D.Neb., Oct. 26, 2009) (attorneys fees); _Jenkins v. General Collection Co._, 2008 WL 4104677

(D.Neb., Aug. 28, 2008) (class certification denied);_Jenkins v. General Collection Co._, 538

F.Supp.2d 1165 (D.Neb. 2008) (Defendants' motion for summary judgment denied) _Jenkins v._

_General Collection, Co._, 2007 WL 4245583 (D.Neb., Nov. 29, 2007) (class certification denied

without prejudice); _Jenkins v. General Collection Co._, 246 F.R.D. 600 (D,Neb. 2007) (striking

offer of judgment); _Jenkins v. General Collection Co._, 2007 WL 2462614 (D.Neb., Aug. 28, 2007)

(striking offer of judgment - Magistrate's decision).

By contrast, no motion for class certification was prepared or filed in the present case

because Defendants repeatedly asserted that they all had net worths that were _de minimis_.

Defendants repeatedly agreed to produce financial statements to support this position. As

described more fully in Mr. Pittman's Declaration, Exhibit J, the first such offer was made on

November 6, the parties' opening attempt at informal settlement negotiation. Response dates

regularly passed without production.  Production of purported financial statements was made on

January 14. When asked on January 18 to confirm the net worth figure in writing in order to move

the settlement discussions forward, Defendants refused to do so, stating:

> "As for Mr. Pooler's net worth, the documents are the best evidence of his net
> worth and unless other documents come to light which show a different net worth, we do
> not intend to attempt to impeach our own documents."

Thereafter, Defendants withdrew the purported financial statements produced on January

14. As late as February 2, Defendants' counsel advised that "I am attempting to get the final

number for H&P." On February 3, through aid of the settlement conference process, Defendants

agreed to produce new numbers and to follow such production with a written settlement counter

offer. On February 4, Defendants produced new financial statements, the numbers in which they

agreed this time, through aid of the settlement conference process, to stand behind. On Friday

afternoon, February 5, Defendants submitted a settlement offer. Plaintiff accepted Defendants'

settlement offer on Tuesday, February 9.

> Thus, Defendants' argument that:

> > "Even after being repeatedly advised that Defendants' net worth would not
> > justify certification of a class, Plaintiff's counsel continued to pursue class
> > certification and suggested a no opt out, no notice class under the Federal Rules of
> > Civil Procedure,"

Opposition, p 5, is not factually accurate.  An accurate statement of what has transpired would be:

> > After repeatedly agreeing, beginning on November 6, 2009, to provide Defendants'
> > financial statements for Plaintiff's review, Defendants only did so on February 4,
> > through aid of the settlement conference process, and only after Defendants had
> > vigorously defended through, among other things, a constitutional challenge to the
> > FDCPA, initial disclosure production stonewalling, vigorous defensive discovery
> > practice, summary judgment motions practice in the face of clear majority view
> > case law against its position, production, then retraction, of purported financial
> > statements, and a settlement conference process that began before the Court on
> > January 19 and that continued thereafter. On the second working day after
> > Defendants made their February 5 settlement offer, Plaintiff accepted.

> Defendants also complain of Ms. Randle's retention of "two experienced FDCPA

practitioners." Opposition, p. 9 of 25. This contention is curious. Defendants are represented by

two attorneys, one from Texas and one from the Washington, DC office of a large (more than 900

attorneys among 14 offices according to its web site) Chicago based law firm. Defendants

submitted with their opposition memorandum a supporting declaration by their Texas attorney

stating that he is licensed to practice before two Circuit Courts of Appeals and three U.S. District

Courts, and that he has been admitted *pro hac vice* to represent parties before seventeen U.S.

District Courts "with regard to representing defendants involved in cases in which plaintiffs assert

alleged violations of the fair debt collection practices act," and that "(I)n addition, I have

successfully prosecuted and defended premises liability cases, product liability cases, personal

injury and medical malpractice, complex insurance related litigation, patent infringement and

securities fraud cases, property dispute cases, cases involving the Federal and state Fair Debt

Collection Practices Act, class related litigation and cases involving the Deceptive Trade Practices

Consumer Protection Act as well as other types of cases."

As shown by Exhibit K, Plaintiff's counsel had separate roles and duties in this litigation,

as follows:

> Mr. Pittman would be primarily responsible for communicating with Ms.
> Randle, interacting with the Court, and assuring compliance with the Local Rules
> and practices of the Richmond Division of the Eastern District of Virginia. Mr.
> Bragg and Mr. Pittman would share the work on other matters, such as pleadings,
> discovery, summary judgment, trial, etc. Mr. Bragg would be primarily responsible
> for the motion for class certification and briefing thereof as well as other class
> related aspects of this litigation, *e.g.* – class notice, class settlement issues,
> distribution of any recovery to the class, etc. The arrangement was designed to
> avoid "reinventing the wheel" from time to time during the pendency of the case,
> with the result that the cost of attorney time spent on the case would come to a
> higher amount without the agreed upon collaboration.

Defendants state at Opposition, p. 6 that:

> Plaintiff's counsel's position was that they could not ethically negotiate a
> resolution of the individual claims without taking into account the prospective
> class.[10] Despite repeated requests for case law supporting this position, Plaintiff's
> counsel never produced any such authority.

This statement is simply not true, as shown by Exhibit L, Plaintiff's counsel's January 18,

2010 letter to Defendants' counsel. Oddly, Defendants' support for their misstatement as shown by

footnote 10 of their opposition is a January 18, 2010 email exchange between counsel, the very day

that Plaintiff provided the authority that Defendants asserted they requested but never received.

### C.    THE HOURLY RATES REQUESTED ARE MARKET RATES.

Defendants also complain that the hourly rates requested by Plaintiff's counsel are

excessive. Opposition, pp. 18-22 of 25. Defendants cite to a litany of out of District cases with

counsel less experienced than Plaintiff's counsel to support its argument for a low hourly rate.  In

*Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) (*Camacho II*), the Ninth

Circuit rejected a similar argument regarding hourly rates and remanded the matter for a

determination of the reasonable hourly rate on the basis of the prevailing rates in the District where

the case was filed, or a community shown to be comparable to the District.  Thus, the out of

District cases cited by Defendants for the appropriate hourly rate are not applicable here.

Likewise, Defendants' discussion on *Johnson v. Credit International, Inc.*, 2005 WL 2401890

(N.D.Cal. 2005), at pp. 20-21 of 25 of its Opposition, is misplaced because that court relied on

decisions outside the Northern District of California to determine the prevailing market rate.

Beginning on p. 19 of their Opposition memorandum, Defendants provide a string cite of

cases they contend support the proposition that Plaintiff seeks compensation at rates "far in excess

of the prevailing market rate in the community for this type of case." However, only one of the ten

cited cases is from the Richmond Division of the Eastern District of Virginia. None of the other

cases are from Virginia, or from any other court in the Fourth Circuit. Moreover, the one case from

the Richmond Division of the Eastern District of Virginia, *Withers v. Eveland*, 997 F. Supp. 738

(E.D.Va. 1998), actually argues for a higher rate for Mr. Pittman than the $425 rate that he has

requested. In *Withers*, the Court awarded Mr. Pittman's then hourly rate of $200, stating the

following:

Page 14

"With respect to the amount of the actual fee request, the Court is satisfied that it is within the prevailing market range for attorneys of similar experience involved in this type of representation."

*Id.* at 740.

The evidence before the Court as to the then current market rate in the Richmond Division of the Eastern District of Virginia was the September 10, 1997 Declaration of S. Miles Dumville, a copy of which is attached hereto as Exhibit M.  In it, Mr. Dumville stated that, in his experience, the rates for attorneys in the Richmond area involved in civil litigation in the federal courts, particularly with regard to the litigation of banking and debtor-creditor disputes, ranged at the time from $150 to $250 per hour.  In awarding Mr. Pittman $200 per hour, the Court awarded Mr. Pittman a rate squarely in the middle of the market rate range that existed at the time based on the evidence of same before the court.  In the case currently before the Court, the unrebutted evidence of the current Richmond area market rate, contained in the declaration of Leonard A. Bennett, is as follows:

> Given the specific knowledge I have as to hourly rates charged and approved in this District and Division, I am comfortable stating that the average hourly rates for federal litigation attorneys in this District and Division range between $300 and $600, depending upon the market targeted by the law firm (e.g. insurance defense is paid at rates at the low ends of this range, while specialized consumer credit defense attorneys at national firms are paid towards the higher end).

Were this Court to rule as it did in *Withers*, it would award Mr. Pittman the rate of $450, squarely in the middle of the market rate range existing at the current time, a rate higher than that sought.  Moreover, the Court would do so even if it found that Defendants' violations of the FDCPA were "technical." As Judge Merhige put it:

> Furthermore, although the resolution of whether Defendant's dunning letter violated the FDCPA did not involve any novel or difficult legal questions, the Court also notes that there are very few attorneys who specialize in litigating Consumer Credit Protection Act cases and that counsel for Plaintiff has a statewide

reputation in this field. *Id.* at 740.

Similarly, in *Jones v. Robert Vest*, 2000 U.S. Dist. LEXIS 19026, * 9 and * 15 (E.D. Va.

2000), Judge Dohnal found as follows:

> It appears that Mr. Pittman did nothing out of the ordinary, but to the contrary,
> devoted an appropriate amount of time investigating the propriety of the claim and
> drafting the appropriate pleadings to prosecute it before submitting anything to the
> Court, a prudent and professional course of action. Therefore, the Court finds that
> the 76.10 hours in attorney time, and 11.30 in paralegal time, is reasonable and a
> proper basis for the granting of relief.
>           …
> Finally, the Court is satisfied that but for the few attorneys in central Virginia like
> Mr. Pittman willing to take cases on behalf of clients such as Mr. Jones, an
> important public service would go unfulfilled. Indeed, it is not unreasonable to
> conclude that it would be difficult for a debtor-client such as this plaintiff to retain a
> private attorney to prosecute a claim because of the dearth of attorneys who appear
> in this and other courts willing, let alone able to pursue such matters. Mr. Pittman
> responded to Mr. Jones' request to enforce Mr. Jones' rights as a consumer and his
> efforts should therefore be recognized by an award of the costs and fees he
> reasonably earned for this type of specialized representation in this marketplace.

Courts outside the Eastern District of Virginia have awarded attorneys' fees for Mr. Bragg

at his hourly rate of $465 as requested here. "The court further finds that . . . $465 an hour for Mr.

Bragg are reasonable rates for attorneys with their equivalent years of experience." *Campos v.*

*Western Dental Services, Inc.*, 2007 WL 2050976, *1 (N.D. Cal., July 13, 2007) Also, see:  *Day v.*

*Check Brokerage Corp.*, 2009 WL 4931739, *2, 2009 U.S. Dist. LEXIS 116695 (N.D.Ill., Dec. 15,

2009) ($465/hr); *McKinney v. Cadleway Prop Inc.*, 2007 WL 1667390, *2, 2007 U.S. Dist. LEXIS

41588 (N.D.Ill., June 8, 2007) ($465/hr); *Palmer v. Far West Collection Services, Inc.*, 2008 WL

5397140 (N.D.Cal., Dec. 18, 2008); *Carroll v. United Compucred Collections, Inc.*, 2008 WL

3001595, 2008 U.S. Dist. LEXIS 67687 (M.D. Tenn., July 31, 2008) ($450/hr.); *Cancio v.*

*Financial Credit Network, Inc.*, 2005 WL 1629809, *3  (N.D.Cal., July 6, 2005) (awarding Mr.

Bragg $435/hour); *Defenbaugh v. JBC & Associates PC*, 2004 WL 1874978, 2004 U.S. Dist.

LEXIS 16256, at *15 (N.D. Cal. 2004), *aff'd by unpublished memorandum,* 2006 U.S. App.

LEXIS 19930 (9th Cir. 2006) ($435/hr.). See:  Declaration of O. Randolph Bragg in Support of

Plaintiff's Motion for an Award of Costs and Attorney Fees ¶ 13.  Document 33-2.

      Other district courts in FDCPA cases have awarded attorneys' fees at rates similar to the

hourly rates requested for Plaintiff's counsel.  See:  *Nelson v. Select Fin. Servs., Inc.*, 2006 WL

1672889, 2006 U.S. Dist. LEXIS 42637 (E.D.Pa., June 8, 2006) ($430 per hour); *Weiss v. Regal*

*Collections & Lancer Invs.,* 2006 U.S. Dist. LEXIS 48995, *8 (D.N.J., July 18, 2006) ($425/hr.);

*Reade-Alvarez v. Eltman, Eltman, & Cooper, P.C.*, 2006 WL 3681138 (E.D.N.Y. Dec 11, 2006)

($420 per hour awarded for attorneys with over 15 years experience litigating FDCPA claims);

*Shelago v. Marshall & Ziolkowski Enterprise, LLC*, 2009 WL 1097534 (D.Ariz. Apr 22, 2009)

(Attorneys fees at $400 per hour awarded).

      **D.**    **DEFENDANTS' DECLARATION IS BIASED AND INCOMPETENT.**

      Mr. Dunn has submitted his Declaration in Support of Defendants' Response to Plaintiff's

Attorneys Fees Application. Document 38. This Declaration should be disregarded because it is

biased and incompetent as to knowledge of relevant local market rates. First, Mr. Dunn is one of

the attorneys representing Defendants. Declaration ¶ 1.  He has a vested interest in the outcome

this motion. Second, Mr. Dunn is not admitted to practice the practice of law in the United States

District Court for the Eastern District of Virginia. Declaration ¶ 2 Therefore, he lacks knowledge

of the rates charged in the Eastern District of Virginia. Thus, pursuant to Rule 602 of the Federal

Rules of Evidence the opinions and statements in Mr. Dunn's Declaration should be stricken for

lack of personal knowledge.

**II.**    **CONCLUSION**

      There is no legal support for Defendants' contention that this case involved a "mere

technical" violation of the FDCPA, and that for this reason Plaintiff's counsel's time and hourly rates should be cut. The Fourth Circuit has exhibited a lack of judicial tolerance for failure to comply with the FDCPA. *Creighton v. Emporia Credit Service, Inc.*, 981 F. Supp. 411, 417 (E.D. Va. 1997).  Because Congress chose a 'private attorney general' approach to enforcement, the award of fees is mandatory in an FDCPA case. *Carroll v. Wolpoff & Abramson*, 53 F.3d 626 (4th Cir. 1995); *Tolentino v. Friedman,* 46 F.3d 645 (7th Cir.), *cert. denied* 515 U.S. 160 (1995).) "The committee views this legislation as primarily self-enforcing; consumers who have been subjected to collection abuses will be enforcing compliance" Senate Report No. 95-382, at 5 (Aug. 2, 1977), *reprinted in* 1977 U.S.C.C. & A.N. 1695, 1699.  The FDCPA … is 'primarily self-enforcing' … through private causes of action. *West v. Costen*, 558 F.Supp. 564, 560 & 70 (W.D.Va. 1983).  As the Fourth Circuit stated in *U.S. v. National Financial Services, Inc.*, 98 F.3d 131, 141 (4th Cir. 1996), "(W)ithout a real sting, the (debt collectors) would be unlikely to be deterred from violating the Act, in light of the substantial profit to be made using aggressive and improper collection practices."  Judge Michael put it this way:

> While the defendant's violation of the provisions of the FDCPA may be merely technical and the award of statutory damages to the plaintiffs may be nominal, the court does not necessarily consider the defendant's actions to be trivial. The defendant is a sophisticated actor in the bad debt collection market and should be possessed of the business and legal acumen to comply with the requirements of the law -- both federal and state law. The court hopes that its disposition of the instant matter encourages the defendant to effect such compliance.

*Shifflett v. Accelerated Recovery Systems, Inc.*, 1996 U.S. Dist. Lexis 8515, * (W.D. Va. 1996).

Plaintiff should be awarded $67,538.19 as the attorneys' fees and expenses expended on litigation as requested in Plaintiff's Motion for an Award of Attorneys' Fees and Costs.  Docket No. 32.  Further, Plaintiff's counsel should be compensated for the time

expended pursuing the present Motion. As noted in her opening memorandum, Plaintiff's

counsel will submit their Supplemental Declarations for the additional time expended

pursuing this Motion.

Respectfully submitted,
Danielle Randle
By Counsel


___/s/_____
By: Dale W. Pittman, VSB#15673
Counsel for Danielle Randle
THE LAW OFFICE OF DALE W. PITTMAN, P.C.
The Eliza Spotswood House
112-A West Tabb Street
Petersburg, VA 23803
(804) 861-6000
(804) 861-3368 (Fax)
dale@pittmanlawoffice.com

O. Randolph Bragg
HORWITZ, HORWITZ & ASSOC.
25 East Washington Street, Suite 900
Chicago, IL 60602
(312) 372-8822
rand@horwitzlaw.com

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that on the 4th day of May, 2010, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

> William Y. Durbin, Esquire
> WINSTON & STRAWN LLP
> 1700 K Street, NW
> Washington, DC 20006
>
> Steven R. Dunn, Esquire
> THE DUNN LAW FIRM
> 12801 North Central Expressway
> North Central Plaza III, Suite 200
> Dallas, TX 75243
>
> Counsel for Defendants H&P Capital, Inc., Gary Robert Pooler, and Noel Louis Pooler

> _____/s/_____
> Dale W. Pittman, VSB#15673
> Counsel for Danielle Randle
> THE LAW OFFICE OF DALE W. PITTMAN, P.C.
> The Eliza Spotswood House
> 112-A West Tabb Street
> Petersburg, VA 23803
> (804) 861-6000
> (804) 861-3368 (Fax)
> dale@pittmanlawoffice.com