## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF VIRGINIA
**Richmond Division**

DANIELLE RANDLE,

     Plaintiff,

v.                                                             Civil Action No. 3:09cv608

H&P CAPITAL, INC., *et al.*,

     Defendants.

## REPORT AND RECOMMENDATION

This matter comes before the Court pursuant to 28 U.S.C. § 636(b)(1)(B) for a Report and Recommendation on Plaintiff Danielle Randle's Motion for an Award of Attorney's Fees and Costs ("Motion for Fees").[1] (Docket No. 32.) The matter has been fully briefed. No party sought a hearing, and a hearing would not aid the decisional process. The matter is now ripe for disposition.

For the reasons stated below, the undersigned Magistrate Judge RECOMMENDS that Randle's Motion for Fees be GRANTED. (Docket No. 32.) However, the undersigned RECOMMENDS that the Court award Randle attorneys' fees and costs in the amount of $85,966.59.

The undersigned Magistrate Judge also RECOMMENDS that Randle's Motion for Leave to File Supplemental Memorandum in Support of Her Motion for an Award of Attorney's Fees and Costs ("Supplemental Motion") be DENIED. (Docket No. 47.) The undersigned

---

[1] Although the title of the motion suggests that Randle seeks an award of fees for a single attorney, the Court notes that Randle seeks to recoup the fees for two attorneys: Dale W. Pittman and O. Randolph Bragg. Accordingly, the Court will refer to Randle's motion as a motion for attorneys' fees.

RECOMMENDS that the Court DENY an award of attorneys' fees to either side for the preparation of this Supplemental Motion.

## I. Factual and Procedural Background

On September 28, 2009, Randle filed a Complaint in this Court alleging that Defendants H&P Capital, Inc., Ms. Roberts, Gary Robert Henrion, and Noel Louis Pooler (collectively, "Defendants") violated the Fair Debt Collection Practices Act ("FDCPA").[2] (Docket No. 1.) Randle claimed Defendants violated the FDCPA by leaving her voicemail messages that failed to inform her that the communication was from a debt collector. (Compl. ¶¶ 13-19.) Randle brought the instant action on behalf of three classes of Virginia residents who received similar telephone messages or prerecorded messages from Defendants. (Compl. ¶¶ 22-25.)

On November 13, 2009, Defendants answered the Complaint. (Docket No. 7.) Defendants' Answer raised two constitutional challenges to the FDCPA. First, Defendants argued that the provisions of the FDCPA "are unconstitutionally vague, internally inconsistent and as such, violate the Due Process clause of the Fifth Amendment of the United States Constitution." (Answer ¶ 50.) Defendants argued that the FDCPA violates the Due Process Clause because: (1) "[i]t punishes Defendants for behavior they could not have known was illegal;" (2) "[i]t impermissibly delegates statutory interpretation and compliance on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory enforcement;" and, (3) "[i]t has a chilling effect on Defendants' exercise of valid commercial speech protected under the First Amendment." (Answer ¶ 56.)

_____

[2] 15 U.S.C. §§ 1692 *et seq.*

Second, Defendants raised a First Amendment challenge to the FDCPA, arguing that the FDCPA violates Defendants' "right of commercial free speech." (Answer ¶ 58.) Defendants argued that the restrictions placed on voicemail messages unreasonably restrained commercial free speech, and that such restrictions "do not directly and materially advance the government's interest in support of the FDCPA." (Answer ¶¶ 60, 61.)

On December 17, 2009, the Honorable Robert E. Payne issued an Order recognizing that Defendants had raised a constitutional issue and directing Defendants to serve on the Attorney General of the United States a copy of the Answer. (Dec. 17, 2009 Order 1.) (Docket No. 15.) Judge Payne further ordered Defendants to present their constitutional challenge "by filing a proper motion for summary judgment." (Dec. 17, 2009 Order 2.)

On December 30, 2009, Defendants filed a Motion for Partial Summary Judgment. (Docket No. 17.) Defendants fully briefed the constitutional challenges raised in their Answer. (*See* Defs.' Mem. Supp. Mot. Partial Summ. J.) (Docket No. 18.)

Before Randle filed her response to Defendants' motion, and prior to any class certification, on February 10, 2010, the case settled. (*See* Pl.'s Mem. Supp. Mot. Award Attorney's Fees & Costs ("Pl.'s Mem."), at 2.) (Docket No. 33.) The parties agreed that Defendants would pay Randle $6,000, and that Defendants would pay Randle the attorneys' fees incurred to prosecute her individual claims. (Pl.'s Mem. 2; Defs.' Mem. Opp'n Pl.'s Attorney's Fee Application ("Defs.' Opp'n"), at 3.) (Docket Nos. 33, 37.)

After negotiating the terms of the settlement agreement, "the parties attempted without success to negotiate the amount of attorneys' fees and costs to be awarded." (Pl.'s Mem. 4.) On

March 31, 2010, Randle filed the instant motion. By Order dated April 27, 2010, Judge Payne referred the motion to the undersigned. (Docket No. 41.)

On July 1, 2010, Randle filed her Supplemental Motion. Randle seeks to call to the Court's attention a June 29, 2010 opinion from this Court and a May 18, 2010 decision from the United States Court of Appeals for the Fourth Circuit, which decisions Randle contends "bear[] directly on issues raised in Ms. Randle's original motion." (Mot. Leave, Ex. A, Pl.'s Supp'l Mem. Supp. Mot. Award Attorney's Fees & Costs ("Supp'l Mem."), at 1.) Specifically, Randle moves the Court to consider the Honorable Dennis W. Dohnal's opinion in *Reynolds v. Reliable Transmissions, Inc.*, No. 3:09cv238 (E.D. Va. June 29, 2010) (approving an hourly rate of $450 for an experienced consumer rights attorney), and the Fourth Circuit's decision in *In re Abrams & Abrams*, 605 F.3d 238 (4th Cir. 2010) (noting that "contingency fees provide access to counsel for individuals who would otherwise have difficulty obtaining representation").

Defendants respond that Randle's Supplemental Motion does not set forth new facts or argument and cites cases distinguishable from the case at bar. (Defs.' Resp. Pl.'s Mot. Leave File Supp'l Mem. ("Defs.' Resp."), ¶ 2.) (Docket No. 48.) Defendants further contend that Randle's "Supplemental Motion and Memorandum merely attempt to increase the amount of attorney's fees Plaintiff's attorneys are seeking for this garden variety, no damages Fair Debt Collection Practices Act case." (Defs.' Resp. ¶ 2.) Defendants move the Court to deny Randle's request for leave to file this Supplemental Motion.

## II. Motion for Attorneys' Fees and Costs

Attorneys Dale W. Pittman and O. Randolph Bragg represented Randle in this matter. (Pl.'s Mem. 2.) Randle contends that Pittman expended a total of 115.5 hours on this matter at a

rate of $425 per hour, and that Pittman's paralegal, Karen A. Graham, expended a total of 10.3 hours on this matter at a rate of $125 per hour. (Pl.'s Mem. 2-3.) Randle contends that Bragg expended a total of 51.1 hours on this matter at a rate of $465 per hour, and that Bragg's paralegal, Shannon Carter, expended a total of .3 hours on this matter at a rate of $115.00. (Pl.'s Mem. 3.) Randle calculates attorneys Pittman and Bragg and their two paralegals expended a total of 177.20 hours on this matter, and that she incurred $74,171.00 in attorneys' fees. (Pl.'s Mem. 3.) In addition, Randle contends that her attorneys incurred expenses totaling $784.29. (Pl.'s Mem. 3.) Accordingly, Randle argues that she has incurred $74,955.29 in attorneys' fees and costs to resolve this matter. (Pl.'s Mem. 4.)

Randle does not seek an award of this entire amount, however. In an exercise of billing discretion, Randle's counsel reduced by ten percent the total amount of attorneys' fees sought for their work in the underlying action. (Mot. for Fees ¶ 15; Pl.'s Mem. 9.) Therefore, Randle seeks an award of attorneys' fees in the amount of $66,753.90, plus costs, for a total of $67,538.19 for her attorneys' work on this matter. (Mot. for Fees ¶ 15; Pl.'s Mem. 27.)

In addition, Randle seeks fees and costs for the time Pittman, Bragg, and their paralegals expended preparing the instant motion. (*See* Supp'l Bragg Decl.; Supp'l Pittman Decl.) (Docket Nos. 44, 45.) Pittman seeks an additional $12,152.50 for the time he and his paralegal expended preparing the instant motion. (Supp'l Pittman Decl. ¶ 4.) Bragg seeks an additional $9,393.00 for the time he spent preparing the instant motion. (Supp'l Bragg Decl. ¶ 4.) Including these fees for the preparation of the instant motion, Randle seeks a total of $89,083.69 in attorneys' fees and costs.

Defendants challenge Randle's calculations on the grounds that: (1) Pittman's and Bragg's hours "are excessive and should be significantly reduced since . . . the vast majority of work and services set forth in Plaintiff's Fee Application were not reasonably incurred in this litigation and were not incurred to prosecute Plaintiff's individual claims;" (2) Randle fails to demonstrate that representation by two attorneys was necessary or reasonable in light of the facts of the case; and, (3) Pittman and Bragg have requested compensation at unreasonable hourly rates. (Defs.' Resp. Opp'n to Mot. for Fees 1-2; *see also* Defs.' Opp'n 2.) (Docket Nos. 36, 37.) Specifically, Defendants contend that although Randle filed suit with the intention of identifying three separate and distinct classes, this matter never became a class action, and therefore, Randle should not recover for any of the time Bragg incurred in this case. (Defs.' Opp'n 13-18.)

### III. Applicable Standard

The FDCPA mandates the payment of attorneys' fees to a successful consumer. 15 U.S.C. § 1692k(a)(3). Calculation of the number of hours reasonably expended times a reasonable hourly rate constitutes "[t]he most useful starting point for determining the amount of a reasonable [attorney's] fee." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). This initial calculation of hours reasonably expended at a reasonable hourly rate constitutes the "lodestar." *See Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 563-64 (1986). The lodestar "calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services." *Hensley*, 461 U.S. at 433.

The twelve factors articulated in *Johnson v. Georgia Highway Express, Inc.* also guide the Court's discretion when considering a motion for attorneys' fees. 488 F.2d 714, 717-19 (5th Cir. 1974), *abrogated by Blanchard v. Bergeron*, 489 U.S. 87, 96 (1989) (holding that a

6

contingent fee agreement does not place a ceiling on the fees recoverable under 42 U.S.C.

§ 1988); *see Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 (4th Cir. 1978) (adopting the *Johnson* factors). The *Johnson* factors are: (1) "the time and labor required;" (2) "the novelty and difficulty of the questions;" (3) "the skill requisite to perform the legal service properly;" (4) "the preclusion of other employment;" (5) "the customary fee;" (6) "whether the fee is fixed or contingent;" (7) "the time limitations imposed by the client or the circumstances;" (8) "the amount involved and the results obtained;" (9) "the experience, reputation, and ability of the attorneys;" (10) "the "undesireability" of the case;" (11) "the nature and length of the [attorney's] professional relationship with the client;" and, (12) "awards in similar cases." *Johnson*, 488 F.2d at 717-19.

No strict formula exists as to the application of these factors. *Trimper v. City of Norfolk*, 846 F. Supp. 1295, 1303 (E.D. Va. 1994). In *Hensley v. Eckerhart*, the Supreme Court of the United States noted "many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." 461 U.S. at 434 n.9. Accordingly, "the lodestar fee is now the proper focus of the entire *Johnson* analysis in most cases." *Daly v. Hill*, 790 F.2d 1071, 1078 (4th Cir. 1986).

"When . . . the applicant for a fee has carried his burden of showing that the claimed rate and number of hours are reasonable, the [lodestar] is presumed to be the reasonable fee contemplated" by the statute. *Blum v. Stenson*, 465 U.S. 886, 897 (1984); *see also Trimper*, 846 F. Supp. at 1304. However, the FDCPA "does not mandate a fee award in the lodestar amount," *Carroll v. Wolpoff & Abramson*, 53 F.3d 626, 629 (4th Cir. 1995), and the district court has the

7

discretion to depart from the lodestar amount in certain circumstances. *See Hensley*, 461 U.S. at 434.

To calculate reasonable hourly rates, the district court must look to the prevailing market rate in the community in which the court sits. *Blum*, 465 U.S. at 895 (stating that attorneys' fees are to be calculated at the prevailing market rate in the relevant community, whether the plaintiff was represented by private or nonprofit counsel); *see also Rehab. Ass'n of Va., Inc. v. Metcalf*, 8 F. Supp. 2d 520, 527 (E.D. Va. 1998). "Examples of the type of specific evidence that [the United States Court of Appeals for the Fourth Circuit has] held is sufficient to verify the prevailing market rates are affidavits of other local lawyers who are familiar both with the skills of the fee applicants and more generally with the type of work in the relevant community." *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 245 (4th Cir. 2009) (*citing Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990)); *Daly*, 790 F.2d at 1080; *Spangler v. Colonial Ophthalmology*, 235 F. Supp. 2d 507, 511 (E.D. Va. 2002).

To calculate a reasonable number of hours expended, "the court must necessarily exclude any hours that are 'excessive, redundant, or otherwise unnecessary,' and therefore not reasonably expended on the litigation." *Lilienthal v. City of Suffolk*, 322 F. Supp. 2d 667, 670 (E.D. Va. 2004) (*quoting Hensley*, 461 U.S. at 434). The district court should also discount hours spent on a plaintiff's unsuccessful claims unrelated to his or her successful claims. *Robinson*, 560 F.3d at 244; *see also Hensley*, 461 U.S. at 440 (holding "that the extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees"); *Saleh v. Moore*, 95 F. Supp. 2d 555, 570-71 (E.D. Va. 2000) ("It is axiomatic that hours spent on the unsuccessful claims that are *distinct in all respects* from the successful claims should be excluded in

8

considering the amount of a reasonable fee."). The Supreme Court has explained that this

requires that counsel exercise billing judgment: "'In the private sector, billing judgment is an

important component in fee setting. It is no less important here. Hours that are not properly

billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory

authority.'" *Hensley*, 461 U.S. at 434 (*quoting Copeland v. Marshall*, 641 F.2d 880, 891 (D.C.

Cir. 1980)) (internal quotations omitted).

## IV. Analysis

### A.    Preliminary Matters

Before the Court addresses the reasonable hourly rates and the amount of time reasonably

expended on this matter, it will first address three preliminary issues.

#### 1.    Pittman's Co-Counsel Arrangement with Bragg Is Reasonable

First, Defendants' contend that "Plaintiff cannot demonstrate that two attorneys were

necessary, let alone reasonable for this garden variety FDCPA case [and that] [t]herefore, the

Court should disallow all time allegedly incurred by Randolph Bragg." (Defs.' Opp'n 2.)

Because attorneys may associate with co-counsel, the Court cannot exclude Bragg's time on this

ground.

First, "[t]here is nothing inherently unreasonable about a client having multiple attorneys,

and they may all be compensated if they are not unreasonably doing the same work and are being

compensated for the distinct contribution of each lawyer." *Norman v. Hous. Auth.*, 836 F.2d

1292, 1302 (11th Cir. 1988). As Randle points out, the use "of two attorneys to represent a party

is the norm for federal court litigation." (Pl.'s Reply Mem. Supp. Mot. for Fees ("Pl.'s Reply"),

at 6.) (Docket No. 42.) Like Randle, Defendants hired two attorneys.

9

Moreover, Pittman and Bragg assumed different responsibilities with respect to the issues presented by Randle's case. (Pl.'s Reply Ex. K, Letter to the Honorable Dennis W. Dohnal, United States Magistrate Judge, from Dale W. Pittman (enclosing declarations regarding distribution of work) ("Letter").) While it appears to the Court that Bragg's involvement in this matter was intended initially for purposes of pursuing a class action, and the matter never became a class action, that does not render Pittman's decision to associate with Bragg unreasonable. *See Mobil Oil Corp. v. Earhart Petroleum, Inc.*, 213 F.3d 632 (4th Cir. 2000), *available at* 2000 WL 530351, at *5 ("While we might question Mobil's need to retain out-of-state counsel for a case tried in Mobil's home state, we cannot say that the decision to retain such counsel was unreasonable or that the district court abused its discretion in awarding Mobil its resulting fees and costs."). Pittman retained primary responsibility for speaking with Ms. Randle and interacting with the Court, while Bragg continued assisting in substantive work, including discovery and motions practice. Given, among other things, Defendant's challenge to the constitutionality of the FDCPA, the Court cannot accept Defendants' argument that any participation by Bragg in this case was unwarranted solely because Pittman independently possesses sufficient experience and legal expertise to litigate such a case. (*See* Defs.' Opp'n 15.) The Court sees every reason why both sides chose to have more than one attorney staff the case.

Second, the Court recognizes that the parties agreed to settle Randle's individual claims only. (Pl.'s Mem. 8; Defs.' Opp'n 3.) This does not preclude Bragg's participation in the case, as Defendants contend, because Bragg's reputation as a class action specialist does not necessarily transform any work he completed with respect to Randle's claims into class action work. (*See* Defs.' Opp'n 13-15 (arguing that Bragg's time should be discounted entirely).)

Bragg shared responsibility with Pittman for work on the pleadings, discovery, summary judgment, and other matters in this case, and was not limited solely to handling class certification issues. (Letter, Ex. 1 ¶ 5 & Ex. 2 ¶¶ 3-4.) No motion for class certification was filed, so no billing for that is shown. The Court's review of the time entries submitted by Pittman and Bragg indicates that the time entries submitted exclude any work related to class certification issues. (*See* Pl.'s Mem. Ex. A, Pittman Decl. ("Pittman Decl."), Ex. F, Time Sheet ("Pittman Time Sheet"); Pl.'s Mem. Ex. B, Bragg Decl. ("Bragg Decl."), Ex. 1, Time Sheet ("Bragg Time Sheet").) Therefore, Pittman and Bragg may each recover fees for their time expended related to Randle's claims, provided that they did not unreasonably perform the same work and they seek compensation for distinct contributions to Randle's case. *Norman*, 836 F.2d at 1302.

### 2. Pittman and Bragg Reduced the Total Amount of Attorneys' Fees Requested by Ten Percent

In an exercise of billing discretion, Randle's counsel reduced by ten percent the total amount of attorneys' fees sought for their work in this action. (Mot. for Fees ¶ 15; Pl.'s Mem. 9.) This voluntary reduction accounts for the vagaries of billing practices and answers Defendants' individualized complaints, such as Bragg too often bills for work performed for one-tenth of an hour. (*See* Defs.' Opp'n 17-18.)

### 3. Defendants' Proportionality Argument Fails

Defendants' briefing implies an underlying theme: that Randle has recovered only $6,000, and her attorneys seek an excessive award in proportion to her recovery. (*See* Defs.' Opp'n 5 (stating that Randle seeks a "mountain of attorneys' fees . . . from this molehillian case"). Such an argument largely based on proportionality fails.

"Paying counsel in FDCPA cases at rates lower than those they can obtain in the marketplace is inconsistent with the congressional desire to enforce the FDCPA through private actions, and therefore misapplies the law." *Tolentino v. Friedman*, 46 F.3d 645, 653 (7th Cir. 1995); *see also Graziano v. Harrison*, 950 F.2d 107, 113 (3d Cir. 1991) ("Given the structure of the [statute], attorney's fees should not be construed as a special or discretionary remedy; rather, the Act mandates an award of attorney's fees as a means of fulfilling Congress's intent that the Act should be enforced by debtors acting as private attorneys general."). The Court applies the statute as written. Accordingly, in light of congressional intent, the Court will not reduce an award of attorneys' fees merely because the plaintiff's recovery appears proportionally lower than the total amount of fees requested.

This argument objecting to a total fee amount also fails to recognize that both counsel were precluded from other employment as they worked on the Randle matter. The *Johnson* factors allow this Court to consider, in awarding fees, that time billed on this case necessarily precludes billing on a different matter. With regard to a solo practitioner such as Pittman, this factor holds significant sway.

Finally, the amount of attorneys' fees is partially driven by the manner in which the parties litigate the case. Here, Defendants challenged the constitutionality of the applicable statute. This challenge falls well within Defendants' rights to pursue, but it does not lack consequences. "While [a defendant] is entitled to contest vigorously [a plaintiff's] claims, once it does so it cannot then complain that the fees award should be less than claimed because the case could have been tried with less resources and with fewer hours expended." *Henson v. Columbus Bank & Trust Co.*, 770 F.2d 1566, 1575 (11th Cir. 1985).

## B. Pittman's Requested Rate Is Reasonable; Bragg's Rate Will Be Reduced to $450 Per Hour

Having reviewed the parties' submissions, the Court finds that the requested hourly rate

of $425 per hour is reasonable for Pittman, but the Court cannot award more than $450 per hour

for Bragg on this record. The Court's consideration of several *Johnson* factors support this

conclusion. The Court must look to the prevailing market rate in the community in which the

Court sits to determine a reasonable hourly rate, *Blum*, 465 U.S. at 895, and the parties must

prove the prevailing market rate via the affidavits of other local attorneys who are familiar with

the skills of the applicants and the type of work in the relevant community. *Robinson*, 560 F.3d

at 245. Specifically, *Johnson* factors 3 and 9 - the skill required to perform the legal services

rendered, and the experience, reputation, and ability of the attorney - counsel in favor of the rates

of $425 per hour for Pittman and $450 per hour for Bragg.

Both Pittman and Bragg have many years of specialized experience pertaining to

consumer law, and it seems that Bragg's expertise as to class litigation in this arena may be close

to singular nationwide. (*See generally* Pittman Decl.; Bragg Decl.) This Court previously has

recognized Pittman's "statewide reputation in this field." *Withers v. Eveland*, 997 F. Supp. 738,

740 (E.D. Va. 1998); *see also Jones v. Vest*, No. 3:00cv287, 2000 WL 33907601, at *4 (E.D. Va.

Dec. 27, 2000). This Court also has noted that Pittman and others who develop the specialized

knowledge to prosecute these types of claims fulfill important public needs that the statutory

structure of the FDCPA encourages: private attorneys general who can navigate a complex

statutory scheme to assure that the client in a debtor-client relationship can pursue claims when a

dispute exists as to terms. *Jones*, 2000 WL 33907601, at *4.

The record here establishes that the prevailing market rate for lawyers of comparable

skill, experience, and reputation performing similar services in the Richmond area falls between

13

$300 and $600 per hour. (*See* Pittman Decl. Ex. D, Bennett Decl. ("Bennett Decl."), ¶ 8 (noting "that the average hourly rates for federal litigation attorneys in this District and Division range between $300 and $600").) The Bennett and Rubin declarations readily establish that Pittman's requested fee of $425 is reasonable within this jurisdiction for the type of work performed. (*See* Bennett Decl ¶ 8; Pittman Decl. Ex. E., Rubin Decl. ("Rubin Decl."), ¶ 5 (noting that Pittman's requested fee of $425 per hour "is certainly reasonable").)

As to Bragg, however, the Court cannot award more than $450 per hour despite his request for $465 per hour. While Bennett notes that national litigators with his and Pittman's level of expertise can earn up to $600 per hour, he notes that his own hourly rate stands at $450, a rate that has been approved by two Courts in this District. *Reynolds*, 2010 WL 2640065, at \*9; (Bennett Decl. ¶ 6). Bragg lists his standard hourly fee at $465, and cites two recent California cases in which he was awarded that rate. (Bragg Decl. ¶ 13). He lists one 2008 Tennessee case in which he was awarded $450 per hour. (Bragg Decl. ¶ 13.) Another 2006 case affirmed by the United States Court of Appeals for the Ninth Circuit from a 2004 California case shows that a rate of $435 per hour prevailed. (Bragg Decl. ¶13.) While Bragg's high level of expertise is more than evident from the record, no declaration before the Court opines specifically as to the fee he places before the Court. Given this record and that the Court must look to rates within this community, the Court finds that the record amply supports that a fee of $450 per hour would be reasonable for this type of work in the community, but cannot make a finding above that amount as to Bragg.

Defendants' arguments attempt to establish that the fees charged by Pittman and Bragg should be reduced drastically to $250 per hour. Part of these arguments rests on the premise the

case required only one attorney, which the Court has rejected elsewhere. Any additional argument also fails to persuade.[3] (*See* Defs.' Opp'n 19-22.)

Accordingly, the requested hourly rate of $425 for Pittman and the award of $450 per hour for Bragg reflect the market rate for lawyers of comparable skill, experience, and reputation performing similar services in the Richmond area. (*See* Bennett Decl. ¶ 8; Rubin Decl. ¶ 5.)

### C. Pittman and Bragg Expended a Reasonable Number of Hours in Reaching Resolution of Randle's Claims

"The Court may not simply accept as reasonable the number of hours reported by counsel." *Trimper*, 846 F. Supp. at 1307. The Court should not compensate counsel for hours expended which the Court finds to be "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. Having conducted a detailed review of the parties' submissions, the Court finds the hours expended to be reasonable, and that counsel have submitted detailed billing records sufficient to support the time charged.

---

[3] Defendants cite a litany of out-of-district cases for the proposition that both Pittman's and Bragg's requested rates exceed the prevailing market rate for lawyers of comparable skill, experience, and reputation performing similar work. (*See* Defs.' Opp'n at 19-22.) As the Court noted *supra*, however, it must look to rates within its own community, *Blum*, 465 U.S. at 895, assessing evidence from other local attorneys who are familiar with the skills of the applicants and the type of work in the relevant community. *Robinson*, 560 F.3d at 245. Defendants provided only the declaration of Steven R. Dunn, counsel for Defendants, in support of their contention that counsel for Randle should be compensated at a rate of $250 per hour. (Defs.' Opp'n Ex. A, Dunn Decl. ("Dunn Decl.").) Dunn is not licensed to practice before this Court. (Dunn Decl. 1-2.) Thus, Defendants have provided no competent evidence to support their argument that counsel for Randle should be compensated at a rate of $250 per hour. *See Spangler*, 235 F. Supp. 2d at 511.

Moreover, although a handful of cases Defendant relies upon date from 2004, the vast majority of the cases Defendant cites are more than ten years old, when the prevailing market rate in *any* jurisdiction would be lower than that currently charged. (*See* Def.'s Opp'n at 19-22.)

### 1. Pittman and Bragg Collectively Expended a Reasonable Amount of Time

Defendants contend Pittman and Bragg collectively expended more hours than reasonably necessary with respect to the following actions: drafting the Complaint; conducting research before the Complaint was filed and communicating regarding this research; communicating with the client prior to filing suit; drafting, revising, and discussing the first set of discovery; reviewing Defendants' response to Randle's first set of discovery; communicating with each other via telephone and email; and drafting Randle's response to Defendants' Motion for Partial Summary Judgment, which response was never filed with the Court.[4] (Defs.' Opp'n 12.) In support of this argument, Defendants have summarized Pittman's and Bragg's time sheets, providing the Court with Defendants' calculation of the total number of hours Defendants believe to be unreasonable. (Defs.' Opp'n 12-13.) Because Defendants failed to itemize their objections to Pittman's and Bragg's time entries by date, it is not clear to the Court to which time entries Defendants refer in their summary charts.[5] Nevertheless, even presuming Defendants' calculations to be correct, the Court finds the hours expended on these tasks to be reasonable.

---

[4] Defendants also contend that Pittman expended an unreasonable number of hours on various other tasks. (Defs.' Opp'n 13.) The Court discusses Pittman's challenged hours in Part IV.C.2, *infra*.

[5] For example, Defendants contend Bragg spent 5.1 hours drafting the Complaint, and Pittman 4.7 hours drafting the Complaint. (Defs.' Opp'n 12.) By the Court's count, however, Bragg spent 8.0 hours drafting the Complaint, and Pittman 3.3 hours. (*See* Pittman Time Sheet (Sept. 17, 2009; Sept. 22, 2009; Sept. 24, 2009; Sept. 25, 2009); Bragg Time Sheet (Aug. 28, 2009; Sept. 9, 2009; Sept. 10, 2009; Sept. 17, 2009; Sept. 18, 2009; Sept. 21, 2009; Sept. 22, 2009; Sept. 22, 2009).)

The Court notes that Pittman's records provide meticulous accounting of time, and Bragg's records provide more than sufficient opportunity for Defendants to challenge individual entries.

The complexity of the issues involved in this case support this Court's finding that counsel expended a reasonable number of hours on this matter. *See Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 130 S. Ct. 1605, 1615 (2010) (noting that the FDCPA is "a comprehensive and complex federal statute"). First, Randle's submissions indicate that the specific FDCPA violation alleged constitutes a topic of debate among those practitioners who specialize in consumer law. (*See* Pl.'s Reply Exs. A-D.) In fact, Defendants later raised constitutional challenges to the issue presented in the Complaint, contending that the FDCPA language was unconstitutionally vague and that the statute violated Defendants' right of free commercial speech. (*See* Answer ¶¶ 50, 56, 58.) Accordingly, the Court cannot find that counsel's research into the applicable case law, or the time spent drafting the Complaint, was unreasonable.

Second, the Court concludes that the hours spent in discussions with Randle prior to filing the Complaint - 3.1 hours, as calculated by Defendants - were, as Randle contends, "necessary to develop the facts of the case, explain the nature of the lawsuit, the duties and responsibilities of the plaintiff, the likely progression of the litigation, and the possible remedies." (Pl.'s Reply 8-9.) Pittman explains that Defendants left multiple telephone messages for Randle "with three different forms of content." (Pl.'s Reply 8.) Pittman listened to the messages from Defendants, made recordings, and evaluated them in order to prepare the Complaint. (Pl.'s Reply 8.) Accordingly, the Court concludes that the time counsel spent discussing the issues with Randle prior to filing the Complaint was not unreasonable.

Third, the Court finds that the hours Pittman and Bragg spent drafting, revising, and discussing Randle's first set of discovery, and subsequently reviewing Defendants' responses to

17

that first set of discovery, to be reasonable. Defendants contend the first set of discovery in Randle's case mirrored that used in a previous suit litigated by Bragg, *Anchondo v. Anderson, Crenshaw & Associates, L.L.C.*, 256 F.R.D. 661 (D.N.M. Mar. 16, 2009), and constituted no more than a "'cut and paste' job [that] could have been accomplished by a law clerk or paralegal in substantially less time." (Defs.' Opp'n 17.) The Court disagrees.

Although the format of Randle's first set of discovery bears resemblance to the discovery used in *Anchondo*, the documents differ: Bragg served discovery on one defendant in *Anchondo*, and four named Defendants in the instant matter; Randle's first set of discovery propounds nearly twice the number of requests for admission than the discovery served in *Anchondo*. (*Compare* Defs.' Opp'n Exs. 5, 6.) The Court finds that counsel expended the hours documented to tailor the *Anchondo* discovery to meet Randle's needs. Furthermore, counsel spent a reasonable number of hours reviewing Defendants' answers to this first set of discovery.

Fourth, the Court cannot conclude that Pittman and Bragg expended an unreasonable number of hours in consultation with each other, whether via telephone or email. Defendants contend Bragg seeks compensation for 11.9 hours he spent in consultation with Pittman, and that Pittman seeks compensation for 10.6 hours he spent in consultation with Bragg. (Defs.' Opp'n 12.) The Court notes that these conversations began in August of 2009 and concluded in March of 2010, meaning that the attorneys each bill less than two hours per month of consultation. Such an amount is far from unreasonable.

Finally, the Court disagrees that Pittman and Bragg spent an unreasonable number of hours preparing a response to Defendants' Motion for Partial Summary Judgment. Pittman and Bragg had "almost complete[d] preparation of Plaintiff's brief in opposition" when the matter

settled. (Pl.'s Reply 10 & Ex. I.) Defendants imply that because the response was never filed, Pittman and Bragg should receive no compensation for its drafting. (*See* Defs. Opp'n 12.) The Court finds it inappropriate to deny Randle fees incurred while responding to a motion filed by Defendants. *Carroll v. United Compucred Collections, Inc.*, No. 1:99-00152, 2008 WL 3001595, at *5 (M.D. Tenn. July 31, 2008); *see generally Saleh*, 95 F. Supp. 2d 555 (finding that the defendants' conduct during discovery necessitated motions to compel, driving up attorneys' fees). While the Court may, in proper circumstances, exclude time billed pursuing issues that ultimately are unsuccessful, this is not such a circumstance. The parties settled the case. Had Pittman and Bragg *not* been preparing a summary judgment response, it seems likely that Defendant would have chosen to have the issue argued in the hopes of prevailing because the other side failed to prepare. Similarly, the Court cannot, and need not, discern the effect of the summary judgment research performed by Pittman and Bragg on settlement. Whether it helped or hindered Randle's position on settlement is of no moment; either way, the time spent researching is compensable. Accordingly, the Court concludes Pittman and Bragg are entitled to recover fees for this disputed time.

## 2. Pittman Expended a Reasonable Amount of Time

Defendants contend Pittman expended an unreasonable number of hours teleconferencing and emailing with Bragg; communicating with Bragg "without differentiating other work performed in conjunction with said communication;" researching the Florida Consumer Collection Practices Act; preparing his attorneys' fee petition; preparing the initial settlement demand; preparing the settlement conference memorandum; and drafting and reviewing a protective order. (Defs.' Opp'n 13.) Because the Court has previously addressed issues of

19

communication with co-counsel and time spent conducting research and found the time expended reasonable, it will not repeat that discussion here.

With respect to the time Pittman billed for preparing the initial settlement demand, preparing the settlement conference memorandum for Judge Dohnal, drafting and reviewing a proposed protective order, and preparing the attorneys' fees petition, as with the previous contested time entries, the Court finds these to be reasonable.

### D.    Fees Related to Preparation of the Motion for Attorneys' Fees

Pittman contends that, in addition to the documentation already before the Court, he and his paralegal spent a total of 35.3 hours preparing the motion for attorneys' fees, for a total of $12,152.50. (Supp'l Pittman Decl. ¶¶ 2, 4.) Bragg contends he spent an additional 20.2 hours preparing the motion for fees, for a total of $9,090.00, at the rate this Court awards. (*See* Supp'l Bragg Decl. ¶¶ 2, 4.) This constitutes a total amount of attorneys' fees of $21,242.50. Although counsel discounted the total fee request by ten percent, that applied only to work completed prior to filing the motion for fees, and therefore, that discounted sum did not include the $21,242.50 spent preparing the fees petition.

Because the Court finds the number of hours spent on this motion to be excessive, and because Pittman and Bragg expended some time during the settlement negotiation process preparing a petition for attorneys' fees, which time is already accounted for in Randle's initial demand for attorneys' fees, the Court will reduce the award of fees related to preparation of the instant motion by ten percent. Accordingly, the total amount of attorneys' fees related specifically to the preparation of this motion is $19,118.25.

20

**E.     Supplemental Motion**

Randle's Supplemental Motion seeks to bring to the Court's attention two cases she contends bear directly on the issues before the Court. (Supp'l Mem. 1.) Because the Court may consider these cases without further briefing from either party, the undersigned Magistrate Judge RECOMMENDS that the Court DENY Randle's Supplemental Motion. (Docket No. 47.) The undersigned RECOMMENDS that the Court DENY an award of attorneys' fees to either side for the preparation of this Supplemental Motion.

## V. Conclusion

For the foregoing reasons, the undersigned Magistrate Judge hereby RECOMMENDS that Randle's Motion for an Award of Attorney's Fees and Costs be GRANTED. (Docket    No. 32.) The undersigned RECOMMENDS that the Court award Randle attorneys' fees and costs in the amount of $66,848.34 for the work performed prior to the Motion for Fees. This includes: (1) compensation for Pittman for 115.5 hours of work at a rate of $425 per hour, his paralegal for 10.3 hours at a rate of $125 per hour, Bragg for 51.1 hours at a rate of $450 per hour, and Bragg's paralegal for .3 hours at a rate of $115 per hour; (2) a ten percent reduction of the overall fee total; and, (3) costs in the amount of $784.29.

The undersigned RECOMMENDS that the Court award Randle $19,118.25 for the work performed with respect to the Motion for Fees.

The undersigned RECOMMENDS that the Court DENY Randle's Supplemental Motion (Docket No. 47) and DENY any additional award of fees to either side for the preparation of this Supplemental Motion.

The undersigned RECOMMENDS that the Court award Randle a total award of $85,966.59.

The parties are ADVISED that they may file specific written objections to the Report and Recommendation within fourteen (14) days of the date of entry hereof. Each objection should be labeled with the corresponding heading from the Report and Recommendation, should be numbered, and should identify with specificity the legal or factual deficiencies of the Magistrate Judge's findings. Failure to file specific objections to the Report and Recommendation may preclude further review or appeal from such judgment. *See Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).

The Clerk is directed to send a copy of the Report and Recommendation to all counsel of record and to the Honorable Robert E. Payne.

                                                    /s/
                                              M. Hannah Lauck
                                              United States Magistrate Judge

Date: 7-21-10
Richmond, Virginia